**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAUN GRAY, an individual, | Civil Action No. 1:25-cv-3484 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| PARAMOUNT GLOBAL, a Delaware corporation; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; PARAMOUNT STREAMING SERVICES INC., a Delaware corporation; and DOES 1-10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Shaun Gray ("Gray" or "Plaintiff"), for his Complaint against Defendants Paramount Global, Paramount Pictures Corporation ("PPC"), and Paramount Streaming Services Inc. ("Paramount Streaming"; collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This action seeks justice for Gray, a talented screenwriter, manipulated and exploited by Hollywood power players, and demands accountability from Defendants that profited prodigiously by misappropriating Gray's creative work.

2.      On May 27, 2022, Paramount Global's PPC theatrically released the blockbuster film *Top Gun: Maverick* (the "Film"), which tells the story of an elite group of fighter pilots at the Top Gun Navy Fighter Weapons School who undertake a dangerous mission. Subsequently the Film was offered on Paramount Streaming's platform, Paramount+, and thereafter the Film frequently aired on Paramount Global's cable channel, Paramount Network. The Film earned six Academy Award nominations, including Best Adapted Screenplay, garnered astronomical box office success, and became one of the highest-grossing movies of all time.

3.      Behind every great film is a great screenplay.

4.      In June 2017, after being hired by PPC to write the screenplay for the Film, screenwriter Eric Warren Singer ("Singer") approached his cousin Gray to join him in co-writing it. Over the next five months, Gray actively participated in story meetings with Singer and the Film's director, Joseph Kosinski ("Kosinski"), and Gray himself wrote key scenes for the screenplay that became the Film's central edge-of-your-seat dramatic action sequences that made it a smash hit.

5.      Gray maintained meticulous, time-stamped files and emails that document and track his writing of these key scenes and his significant contributions to the Film and its screenplay. *See* Exhibit 2, attached hereto and incorporated by reference.

6.      Gray's work was not work-made-for-hire for Singer or PPC under the multi-factor test enunciated by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) and interpreted by the Second Circuit in *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992). Further, neither Singer nor Kosinski nor PPC secured an assignment or license of Gray's work, despite their extensive use and Defendants' exploitation of Gray's work in the Screenplay and Film.

7.      Singer and all other writers contributing to the Film's final screenplay (the "Screenplay"), *with the sole exception of Gray*, wrote pursuant to explicit work-for-hire employment agreements with PPC, such that PPC is the single statutory author of such other writers' material under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. All persons rendering creative or other contributions to the Film also made such contributions pursuant to explicit work-for-hire employment agreements with PPC. The result, under U.S. copyright law, is that Gray and PPC are the sole joint authors of the Screenplay and Film and the joint owners of the copyrights therein.

2

8.      Accordingly, Gray seeks a declaration of his joint authorship and joint ownership of the Screenplay and Film's copyrights under the Copyright Act. As a joint author and joint owner of such copyrights, Gray is entitled to and seeks a full accounting and payment of his *pro-rata* share of all profits received by Defendants from the exploitation of the Screenplay and Film in all media. In the alternative, if the Screenplay and/or Film do not qualify as joint works as to which Gray is a joint author, Defendants are liable for copyright infringement resulting from the Film's extensive use and exploitation of the copyrighted material authored by Gray.

## PARTIES

9.      Plaintiff Gray is an individual, citizen, and resident of the County of Ulster, New York.

10.     On information and belief, Defendant Paramount Global is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in the County of New York, New York. On information and belief, Paramount Global owns Defendants PPC and Paramount Streaming, and owns the cable television channel, Paramount Network, overseen by Paramount Media Networks, a division of Paramount Global.

11.     On information and belief, Defendant PPC is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in the County of Los Angeles, California.

12.     On information and belief, Defendant Paramount Streaming is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in the County of New York, New York, and Paramount Streaming owns and operates the streaming platform Paramount+.

13.     Plaintiff is informed and believes and based thereon alleges that the fictitiously

named Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them (hereinafter, "Doe(s)"), were in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named Defendants, whether individual, corporate, associate, or otherwise are presently unknown to Plaintiff, and Plaintiff will amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each reference herein to a named Defendant or to Defendants shall also refer to the Does and each of them.

## JURISDICTION AND VENUE

14.    This Court has original subject matter jurisdiction pursuant to 17 U.S.C. § 101 *et seq.* (actions arising under the Copyright Act), 28. U.S.C. § 1331 (actions arising under the laws of the United States), and § 1338(a) (actions arising under an Act of Congress relating to copyrights).

15.    This Court has supplemental jurisdiction over the related state law accounting claim pursuant to 28 U.S.C. § 1367, because it forms part of the same case or controversy as the federal claims herein.

16.    This Court has personal jurisdiction over Defendants Paramount Global and Paramount Streaming, because they are either domiciled in or have their principal place of business in the State of New York and in this District.

17.    This Court has personal jurisdiction over Defendant PPC because it has conducted, and continues to regularly conduct, business in the State of New York and in this District, and has such substantial contacts with it as to warrant general jurisdiction. Specific jurisdiction is also proper because claims in this action arise from PPC's contacts, transactions,

and/or occurrences within New York and, on information and belief, PPC has transacted and continues to transact business in this District by advertising, exploiting, distributing, broadcasting, and streaming to customers in this District.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) because this civil action arises under an Act of Congress relating to copyrights and Defendants or their agents reside or may be found in this District, as well as 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

19.    Gray is an accomplished writer and visual effects artist.

20.    Singer, Gray's cousin, is a writer whom, on information and belief, PPC employed under a work-made-for-hire contract to write the Film's screenplay beginning in or about June 2017. As such, Singer's contributions to the Film's Screenplay and Film are owned by PPC as a work-made-for-hire and PPC is the statutory author of Singer's contributions to the Screenplay and Film under the Copyright Act, 17 U.S.C. § 201(b).

21.    On information and belief, PPC also employed Kosinski under a work-made-for-hire contract to direct the Film and, as director, to oversee its Screenplay's development. As such, Kosinski's contributions to the Screenplay and Film are owned by PPC as a work-made-for-hire and PPC is the statutory author of Kosinski's contributions to the Screenplay and Film under the Copyright Act, 17 U.S.C. § 201(b).

22.    In or about June 2017, Singer approached Gray to contribute his talents as a writer to the Screenplay, emphasizing that the Film's director, Kosinski, had specifically requested Gray's involvement because he was impressed with Gray's previous work as a writer. Both Singer and Kosinski represented themselves to Gray as having the authority and the approval of

PPC and/or had the apparent authority of PPC to involve Gray in the project.

23.     At all relevant times, Singer and Kosinski acted, with respect to Gray, as PPC's employees and/or agents acting within the scope of such employment and/or agency.

24.     Between June and November 2017, Gray, Singer, and Kosinski participated in extensive story development meetings, and Gray wrote significant portions of the Screenplay draft completed by Gray and Singer.

25.     On information and belief, before Gray and Singer's involvement in the Screenplay, PPC had employed other writers, including Peter Craig and Justin Marks, under work-made-for-hire contracts to develop earlier screenplay drafts for a *Top Gun* sequel.

26.     On information and belief, after Gray and Singer completed their draft of the Screenplay, PPC hired Ehren Kruger ("Kruger") and Christopher McQuarrie ("McQuarrie") under work-made-for-hire contracts to further develop the Screenplay.

27.     On information and belief, with the exception of Gray, all other persons rendering creative services or contributing creative content of any kind in connection with the Screenplay and the Film did so pursuant to explicit work-made-for-hire contracts with PPC.

28.     Unlike all the other writers who contributed to the Screenplay, Gray never entered into a work-made-for-hire agreement or any other written contract with PPC, Singer, or any other person or entity concerning his written contributions to the Screenplay. Gray also never received any compensation from PPC.

29.     Gray's written contributions to the Screenplay were not made as an employee of either Singer or PPC; accordingly, Gray received no salary or employee benefits (i.e., no healthcare, pension, unemployment insurance, workers' compensation, sick pay, or vacation pay) from either Singer or PPC. Gray wrote using his own tools and instruments, in his own space, set

6

his own hours, and worked at his own pace.

      30.    Gray authored entire scenes in the completed Screenplay draft written by Gray and Singer, as documented by time-stamped emails and drafts (the "Gray Scenes"), which scenes later appeared in the Film, including without limitation, the following:

- The first major action scene where the lead character "Maverick" pushes a high-tech prototype fighter jet past its limits, breaking speed records before the aircraft catastrophically fails;

- The scene where Maverick repeatedly outmaneuvers elite Top Gun graduates during training exercises, culminating in a protocol-violating dogfight with "Rooster";

- The scene where Maverick briefs the trainees on a seemingly impossible mission, shocking them with its dangerous requirements;

- The scene where all the pilot trainees fail to complete the mission simulation within required altitude and time constraints;

- The scene where Maverick proves the "impossible" mission is actually achievable by flying it himself;

- The scene where a trainee's fighter jet hits birds, forcing the pilot to eject before the aircraft crashes and explodes;

- The scene where two fighter jets, led by Maverick, successfully bomb an enemy nuclear facility;

- The scene where a missile strikes Maverick's jet as he leaves enemy territory, forcing him to eject;

- The scene where Rooster ejects from his aircraft and Maverick confronts him angrily for continuing to risk his life instead of leaving enemy territory;

- The scene where Maverick and Rooster steal an enemy F-14 and escape using a short runway;

- The scene where two enemy planes approach Maverick and Rooster during their escape and, after attempting to play it cool, they shoot down their pursuers; and

- The scene where one engine fails, and Maverick must crash-land the F-14 on the aircraft carrier, U.S.S. Theodore Roosevelt.

31.    Singer and Kosinski consistently praised Gray for the many pivotal and impactful scenes that he wrote. Gray also exercised decision-making and editorial authority over revisions to other scenes in the screenplay suggested by Singer and/or Kosinski.

32.    Gray superintended his work by exercising creative control over separate and indispensable elements of the Screenplay.

33.    Gray never transferred, assigned, or licensed his work, including but not limited to the Gray Scenes, to Singer, Kosinski, PPC, the other Defendants, or anyone else, nor did he authorize Defendants' commercial exploitation of his work.

34.    On May 27, 2022, Defendant Paramount Global's subsidiary, PPC, theatrically released the Film featuring the Gray Scenes, which comprised some of the most character-defining and impactful scenes in the Film. The Film's credits nonetheless read "Screenplay by Eric Kruger, Eric Warren Singer and Christopher McQuarrie" and "Story by Peter Craig and Justin Marks."

35.    The Film was thereafter released on Defendant Paramount Streaming's platform, Paramount +, on or about December 22, 2022, and thereafter aired on Paramount Global's cable television channel, Paramount Network.

36.    PPC has also released and/or licensed numerous derivative works further exploiting Gray's creative material, including without limitation, video games and arcade games.

37.    PPC is also reportedly developing a sequel to the Film that, on information and belief, incorporates copyrighted material from the Screenplay and Gray Scenes.

## FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT

38.    Plaintiff realleges and incorporates by reference paragraphs 1 through 37

inclusive, as though fully set forth herein.

39.    The Screenplay and Film are copyrightable works under 17 U.S.C. § 102(a).

40.    Gray's contributions to the Screenplay and Film were not "work-made-for-hire" for PPC, Singer, Kosinski, or any other person or entity. Gray is the sole author of his contributions to the Screenplay and to the Film, including without limitation the Gray Scenes, under 17 U.S.C. § 201(a).

41.    By reason of Gray's significant written contributions to the Screenplay and Film, Gray is a joint author of the Screenplay and Film. Accordingly, Gray was and remains entitled to proper attribution and credit as a co-author of the Screenplay.

42.    PPC is the other statutory joint author of the Screenplay and Film under 17 U.S.C. § 201(b) because, with the exception of Gray's contributions, all other creative contributions to the Screenplay and Film were "works-made-for-hire" under 17 U.S.C. § 101, made pursuant to work-made-for-hire employment contracts with PPC.

43.    Accordingly, Gray and PPC are the two joint authors of the Screenplay and Film.

44.    The Screenplay is a "joint work" as between Gray and PPC, as that term is defined in 17 U.S.C. § 101. Gray and PPC each made independently copyrightable contributions to the Screenplay and Film, and both the Screenplay and Film rely on each such author's contributions to form a unitary whole.

45.    Gray and PPC each manifested an objective intent for their contributions to be merged into inseparable or interdependent parts of a unitary whole as joint authors in story meetings, writing sessions, and other communications between Gray and PPC's employees, agents, and/or representatives, including Singer and the Film's director, Kosinski.

46.    The audience appeal of the Screenplay and Film turns on the contributions of both

Gray and PPC, and the share of each in the Screenplay and Film's success cannot readily be separately appraised.

47.     As joint authors of the Screenplay and Film, Gray and PPC are joint owners of an undivided interest in the copyright in the Screenplay and Film under 17 U.S.C. § 201(a).

48.     As joint owners of the Screenplay and Film's copyrights, Gray and PPC are each entitled to an equal, undivided interest in any and all profits earned from the exploitation of such copyrights, and PPC has an absolute duty to account to and pay Gray his equal share of the profits earned from the exploitation of such copyrights.

49.     PPC has failed in its obligation as joint owner of the Screenplay and Film's copyrights to account to and pay Gray for his equal, undivided interest in the profits earned from PPC's exploitation of the Screenplay and Film.

50.     Gray contends, and PPC denies, that Gray is a joint author of the Screenplay and Film and a joint owner of the copyrights therein.  PPC has repudiated Gray's joint authorship by commercially releasing the Film without crediting Gray as a joint author of the Screenplay or thereafter accounting to Gray for his share of the profits from the Screenplay and Film.

51.     By reason of the foregoing facts, an actual, present, and justiciable controversy has arisen and now exists between Gray and Defendants as to whether Gray is a joint author and joint owner of the Screenplay and/or Film, entitling Gray to an equal, undivided share of the profits earned from the exploitation of the Screenplay and Film's copyrights.

52.     Gray requests a declaration of rights and ownership with respect to the material he authored in the Screenplay and Film.

53.     Gray requests a declaratory judgment that the Screenplay and/or Film are each a "joint work" under 17 U.S.C. § 101; that Gray and PPC are joint authors of the Screenplay

10

and/or Film and joint owners of the copyrights therein under 17 U.S.C. § 201(a); and that Gray is therefore entitled to an equal, undivided share of all profits and other monies derived from the exploitation of the Screenplay and Film.

54.    Gray further requests a declaratory judgment that he is entitled to the imposition of a constructive trust, and that PPC is the constructive trustee for the benefit of Gray as to all profits, gains, and advantages received or to be received by PPC derived from the exploitation of the Screenplay and Film's copyrights.

55.    A declaration by this Court is necessary and appropriate pursuant to the Declaratory Judgment Act so that Gray may ascertain his rights and PPC's obligations regarding Gray's joint authorship and joint ownership of the Screenplay and Film.

<u>**SECOND CLAIM FOR RELIEF**</u>
**(In the alternative to the First Claim)**

**COPYRIGHT INFRINGEMENT**

56.    Plaintiff realleges and incorporates by reference paragraphs 1 through 37 inclusive, as though fully set forth herein.

57.    Between June and November 2017, Gray wrote and authored the Gray Scenes, which PPC thereafter commercially exploited in the Film.

58.    The Gray Scenes are copyrightable material and secured a statutory copyright upon fixation under 17 U.S.C. § 102(a).

59.    Gray exclusively owns all rights in and to the Gray Scenes. As a prerequisite to Gray's claim for copyright infringement in the alternative to the First Claim for Relief, Gray registered the Gray Scenes with the U.S. Copyright Office under Registration Numbers PAu004227902, PAu004228526, and PAu004228532.

60.    PPC had full access to the Gray Scenes, including without limitation, by virtue of

Gray's emailing them to Singer, PPC's employee-screenwriter, and to Kosinski, PPC's employee-director, and the inclusion of the Gray Scenes in the Screenplay draft(s) delivered by Singer to PPC.

61.     Defendants failed to secure an assignment or license of Gray's rights under copyright in the Gray Scenes that Defendants exploited in the Film.

62.     By Defendants' exploitation and release of the Film, which substantially incorporates the Gray Scenes, and Defendants' exploitation of ancillary derivative works of the Screenplay and Film, Defendants infringed, and will continue to infringe, Gray's copyright and rights under copyright in the Gray Scenes.

63.     A summary of key literary elements in the Film which are substantially similar to those contained in the Gray Scenes include, without limitation, those set forth in detail in **Exhibit 1**, attached hereto and incorporated by reference herein.

64.     Additional information concerning the Gray Scenes, including file names and supporting timestamps, is set forth in detail in **Exhibit 2**.

65.     Each infringement by Defendants of the Gray Scenes constitutes a separate and distinct act of infringement.

66.     Gray is entitled to recover from Defendants the damages, including pre-judgment interest, he sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts alleged hereinabove, in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

67.     Alternatively, Gray is entitled to the maximum statutory damages recoverable, or for such other amounts as may be proper, pursuant to 17 U.S.C. § 504.

68.     Gray is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C.

§ 505.

69.    As a direct and proximate result of Defendants' ongoing copyright infringement, Gray has suffered and will continue to suffer severe injuries and ongoing harm, much of which cannot be reasonably or adequately measured or compensated in money damages if such wrongful conduct is allowed to continue and not enjoined. The ongoing harm this wrongful conduct will continue to cause Gray is both imminent and irreparable. Gray's injuries and damages include, without limitation, repeated infringement of his copyright and interests, loss of First Amendment rights to control his expression, diminution of the value of his copyright and interests, loss of customers, dilution of goodwill, and injury to his business reputation.

70.    Gray has no adequate remedy at law for many of his injuries in that such injuries cannot be reasonably, adequately, or precisely measured or compensated in damages if such wrongful conduct is not restrained and allowed to continue unabated.

71.    Pursuant to 17 U.S.C. § 502, Gray is entitled to a preliminary injunction during the pendency of this action and a permanent injunction ordering that Defendants, their officers, agents, employees, licensees, and assigns be enjoined from producing, reproducing, distributing, and exploiting or authorizing the production, reproduction, distribution, display, or exploitation of the Film and other derivative motion pictures or products incorporating copyrightable material from the Gray Scenes, and from engaging in any further violations of the Copyright Act.

## THIRD CLAIM FOR RELIEF

### ACCOUNTING

72.    Plaintiff realleges and incorporates by reference paragraphs 1 through 71 inclusive, as though fully set forth herein.

73.    As to the First Claim for Relief: As joint author and the joint owner of the

Screenplay and Film's copyrights, Gray is entitled to an equal *pro-rata* share of the profits, gains, and advantages Defendants have enjoyed from the use and exploitation of such copyrights. Defendants have a duty to account to Gray and Gray has a right to an accounting of all such profits, gains, and advantages derived from Defendants' use and exploitation of such copyrights.

74.    PPC has failed to so account to Gray.

75.    As to the Second Claim for Relief (pled in the alternative): Defendants have reproduced, used, distributed, streamed, and broadcast the copyrighted Gray Scenes, and Defendants' profits are a measure of damages. In the alternative to actual damages, at Gray's election, Defendants are liable for statutory damages pursuant to 17 U.S.C. § 504 for each act of infringement (e.g., the number of times the Film was exhibited, broadcast, and streamed). The profits accumulated by Defendants infringing acts, and the number of such instances of infringement, are unknown to Gray and can be determined only by an accounting.

76.    Defendants solely control their books, records, and other information needed to determine the amounts due to Gray, and Gray has no reasonable means by which he can obtain the information necessary to ascertain the amounts due to him without an accounting.

77.    Gray requests that the Court order Defendants to provide a complete and honest accounting of all profits, gains, and advantages derived from their exploitation of the Screenplay and Film's copyrights in any and all media and all sums due to Gray, and to pay to Gray all sums shown due by such accounting.

78.    For the reasons herein stated, Gray's request for an accounting and a judgment for damages in accordance therewith is justified.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Gray prays for judgment against Defendants as follows:

<u>ON THE FIRST CLAIM FOR RELIEF</u>

1.      For a declaration that Gray is the author of the Gray Scenes constituting significant contributions to the Screenplay and Film, each of which is a "joint work" under 17 U.S.C. § 101, and that Gray and PPC are joint authors of the Screenplay and Film, and joint owners of the Screenplay and Film's copyrights under 17 U.S.C. § 201(a);

2.      For a declaration that Gray is therefore entitled to receive, and that PPC has a duty to account to Gray for, an equal, undivided share of all profits and other monies derived from the exploitation of the Screenplay and Film's copyrights;

3.      For a declaration that Gray is entitled to a constructive trust, and that Defendants are the constructive trustees for the benefit of Gray as to all profits, gains, and advantages received or to be received by Defendants derived from the exploitation of the Screenplay and Film's copyrights; and

4.      For such other and further relief and remedies available under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Court may deem just and proper.

<u>ON THE SECOND CLAIM FOR RELIEF</u>
(In the alternative to the First Claim)

5.      For a judgment that Defendants have infringed Gray's copyright in the Gray Scenes.

6.      For (i) actual damages and the profits derived by Defendants, and each of them, from their infringing activities, or (ii) in the alternative to actual damages, for statutory damages in the maximum amount permitted under applicable law with respect to Gray's infringed copyrights pursuant to 17 U.S.C. § 504, which election Gray shall make prior to the rendering of final judgment herein, according to proof in an amount to be determined at trial.

7.      For an accounting and restitution to Gray of all gains, profits, and advantages

Defendants have derived from their copyright infringement of the Gray Scenes, including by their production, distribution, display, and exploitation of the infringing Film, and all ancillary exploitations based thereon;

8.    For an order preliminarily during the pendency of this action, and thereafter permanently, (i) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from exploiting and infringing the copyright in the Gray's work, in any manner, and (ii) enjoining Defendants, their officers, agents, employees, licensees, and assigns, and all persons acting in concert with it, from engaging in or authorizing the production, reproduction, distribution, display, and/or exploitation of the infringing Film and other derivative motion pictures, or ancillary products based thereon, and derived from Gray's work, without a written copyright assignment or license from Gray;

9.    For attorneys' fees and full costs pursuant to 17 U.S.C. § 505; and

10.    For such other and further relief and remedies available under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, that the Court may deem just and proper.

<u>ON THE THIRD CLAIM FOR RELIEF</u>

11.    For an accounting and the payment to Gray, as joint author and joint owner of the copyrights in the Screenplay and Film with PPC, of an equal, undivided share of all profits, gains, benefits, and advantages derived from Defendants' exploitation of the Screenplay and Film's copyrights;

12.    For an order that Gray is entitled to recover from Defendants in this lawsuit all sums due pursuant to such accounting; and

13.    For such other and further relief and remedies under an action for accounting that the Court may deem just and proper

ON ALL CLAIMS FOR RELIEF

14.     For an order that Plaintiff is entitled to the right of proper attribution and to receive shared "Screenplay by" credit on any new copies made of the Film, future marketing or publicity regarding the Film, and on future derivative works based on the Screenplay and/or Film;

15.     For restitution of all benefits, compensation, profits, and advantages wrongfully obtained by Defendants as a result of their exploitation of Gray's work, in an amount to be proven at trial;

16.     For disgorgement of all compensation, profits, and monies wrongfully received by Defendants;

17.     For the imposition a constructive trust over all proceeds, profits, compensation, and other ill-gotten gains and benefits received or to be received by Defendants as a result of their exploitation of Gray's contributions to the Screenplay and Film;

18.     For Gray's costs of suit;

19.     For interest at the highest lawful rate on all sums awarded to Gray other than punitive damages;

20.     For Gray's reasonable attorneys' fees; and

21.     For such other and further relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Gray hereby demands a trial by jury on all issues so triable.

Respectfully submitted:

DATED: April 27, 2025          **TOBEROFF & ASSOCIATES, P.C.**

_/s/ Marc Toberoff_
          Marc Toberoff

mtoberoff@toberoffandassociates.com
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

_Attorneys for Plaintiff Shaun Gray_