# EXHIBIT F
## Part 2 of 2

## RIDER TO EXHIBIT "DP"

This Rider to Exhibit "DP" is attached to and made part of the Memorandum of Agreement dated as of June 6, 2017, between PARAMOUNT PICTURES CORPORATION ("PPC") and BULLSH!T ARTISTS, INC. ("Participant") in connection with the motion picture project currently entitled "TOP GUN 2" (the "Picture").



1

CONFIDENTIAL                                                              PPC-GRAY-0000216



2

CONFIDENTIAL

PPC-GRAY-0000217



3

CONFIDENTIAL

PPC-GRAY-0000218



4

CONFIDENTIAL



5

SINGER - EXECUTION COPY - Writer - Main Agreement - TOP GUN 2 (2011) - Jun 6, 2017 [ MPL-010577 v 4.0 ].docx

CONFIDENTIAL



\* \* \*

SINGER - EXECUTION COPY - Writer - Main Agreement - TOP GUN 2 (2011) - Jun 6, 2017 [ MPL-010577 v 4.0 ].docx

CONFIDENTIAL

PPC-GRAY-0000221

## EXHIBIT "DP"

This Exhibit is attached to and made part of the Memorandum of Agreement dated as of June 6, 2017, between PARAMOUNT PICTURES CORPORATION (therein "Company" and herein "PPC") and BULLSHIT ARTISTS, INC. (therein "Lender" and herein "Participant"), relating to the motion picture project currently entitled "TOP GUN 2" (the "Picture").

1

CONFIDENTIAL

PPC-GRAY-0000222

EXHIBIT "DP"

EXHIBIT DP
1-6-2015

CONFIDENTIAL                                                            PPC-GRAY-0000223

EXHIBIT "DP"

## TABLE OF CONTENTS

| I. | APPLICATION OF GROSS RECEIPTS | | 6 |
|----|----|----|----|
| | A. | Fees | 6 |
| | B. | Expenses | 6 |
| | C. | Other Participations | 6 |
| | D. | Negative Cost | 6 |
| | E. | Deferments | 6 |
| | F. | Defined Proceeds | 7 |
| II. | GROSS RECEIPTS | | 7 |
| | A. | Gross Receipts Sources | 7 |
| | B. | Gross Receipts Exclusions | 7 |
| III. | DISTRIBUTION FEES | | 8 |
| | A. | Theatrical | 8 |
| | B. | Non-Theatrical | 9 |
| | C. | Free TV | 9 |
| | D. | All Other | 9 |
| | E. | Fee Computation | 9 |
| IV. | DISTRIBUTION COSTS | | 9 |
| | A. | Conversion | 9 |
| | B. | Checking | 9 |
| | C. | Collections | 10 |
| | D. | Licenses | 10 |

2

CONFIDENTIAL

PPC-GRAY-0000224

|     | E. | Taxes                                  | 10 |
|     | F. | Residuals                              | 10 |
|     | G. | Trade Dues                             | 11 |
|     | H. | Ad Costs                               | 11 |
|     | I. | Prints                                 | 11 |
|     | J. | Transportation                         | 12 |
|     | K. | Claims                                 | 12 |
|     | L. | Copyright, Trademark, and Patent Costs | 12 |
|     | M. | Other Versions                         | 12 |
|     | N. | Insurance                              | 12 |
|     | O. | General                                | 12 |
| V.  | NEGATIVE COST |                             | 13 |
|     | A. | Cost of Production                     | 13 |
|     | B. | Administrative Charge                  | 13 |
|     | C. | Finance Charge                         | 14 |
|     | D. | Overbudget Add-On                      | 14 |
| VI. | REPORTING |                                 | 14 |
|     | A. | General                                | 14 |
|     | B. | Books                                  | 15 |
|     | C. | Withholdings                           | 15 |
|     | D. | Statements                             | 15 |
|     | E. | Incontestability                       | 16 |
|     | F. | Address                                | 16 |

3

CONFIDENTIAL                                                                                     PPC-GRAY-0000225

| | G. | Reserves | 16 |
|---|---|---|---|
| | H. | Tax Credits | 17 |
| | I. | Creditor - Debtor | 17 |
| VII. | | MISCELLANEOUS | 17 |
| | A. | No Representation | 17 |
| | B. | Control of Distribution and Marketing | 18 |
| | C. | Sale of All Rights | 18 |
| | D. | Assignment by Participant | 19 |
| | E. | Third Party Beneficiary | 20 |
| | F. | Headings | 20 |
| | G. | No Partnership/Joint Venture | 20 |
| | H. | Dispute Resolution | 20 |
| VIII. | | DEFINITIONS | 21 |
| | A. | Applicable Distribution Fees | 21 |
| | B. | Conversion | 22 |
| | C. | Film Rental | 22 |
| | D. | Gross Receipts | 22 |
| | E. | Here | 23 |
| | F. | Home Versions | 23 |
| | G. | Includes | 23 |
| | H. | Non-Theatrical Licensee | 23 |
| | I. | Or | 23 |
| | J. | Participant | 23 |

4

CONFIDENTIAL

PPC-GRAY-0000226

K.  Person                                    23

L.  PPC                                       24

M.  Restricted Funds                          24

N.  Royalties                                 25

O.  Subdistributor                            25

P.  Territory                                 25

Q.  This Agreement                            25

SCHEDULE A                                    26

5

EXHIBIT DP
1-6-2015

I. APPLICATION OF GROSS RECEIPTS.

Gross Receipts* shall be applied to the following categories on a continuing basis and in the following order of priority:

A. Fees.

PPC distribution fees (set forth in Paragraph III below).

B. Expenses.

PPC Distribution Costs (set forth in Paragraph IV below).

C. Other Participations.

Contingent compensation and other amounts that PPC may be contractually obligated to pay to any Person, including Participant, for rights or services in connection with Picture and which are not included in the computation of the Negative Cost; provided, however, no sums payable as a share of Defined Proceeds shall be deductible under this Paragraph I.C. The amounts set forth in this Paragraph I.C shall be deductible pursuant to this Agreement if, when, and to the extent that PPC's obligation to pay it accrues, whether or not such payment has then become due or been made.

D. Negative Cost.

Negative Cost (as set forth in Paragraph V below), provided that Interest (as set forth in Paragraph V.C) shall be recoupable before the Cost of Production (as set forth in Paragraph V.A) and Overhead (as set forth in Paragraph V.B).

E. Deferments.

All amounts payable pursuant to a contract approved in writing by PPC to any Person entitled to such amounts payable out of first Defined Proceeds or immediately prior to there being such Defined Proceeds, unless there is a different order of payment specified under this Agreement.

* Capitalized terms used in this Exhibit "DP", which are defined in Paragraph VIII below and elsewhere, have the specific meaning given to them in this Exhibit "DP".

6

CONFIDENTIAL                                                         PPC-GRAY-0000228

F.   Defined Proceeds.

"Defined Proceeds" pursuant to this Agreement shall mean the Gross Receipts, if any, remaining after deduction of the items specified in Paragraphs I.A through I.E inclusive.

II.   GROSS RECEIPTS.

A.   Gross Receipts Sources.

As used in this Exhibit "DP", Gross Receipts means all receipts received by PPC on behalf of the Picture as:

(1)   Film Rental.

(2)   Net amounts from Non-Theatrical Licensees.

(3)   Receipts from Flat Sale(s).

(4)   Receipts (less all costs) from copyright-infringement or similar claims.

(5)   Receipts from theatre box offices for so-called "four-wall" or "road show" exhibitions (as such terms are customarily understood in the motion picture industry), to the extent receipts from all such engagements taken as a whole exceed the costs incurred for all such engagements.   (Ownership, operation, or control of a theater by PPC shall not be deemed a four-wall or road show exhibition.)

(6)   Subsidies or prizes, provided that if use of such amounts is a condition to receiving them, then such amounts are not included until actually used.

(7)   Royalties computed in accordance with Schedule A attached to this Exhibit "DP".

If the costs relating to Paragraphs II.A.(4) or (5) above, as applicable, and applicable distribution fees (if any) exceed receipts from Paragraphs II.A.(4) or (5)above, as applicable, such excess amount shall be deductible as a Distribution Cost.

B.   Gross Receipts Exclusions.

The following are specifically excluded from Gross Receipts:

7

CONFIDENTIAL                                                    PPC-GRAY-0000229

(1) Box office receipts, concession receipts, entrance or ride receipts, and any other receipts of any theatre or other exhibitor (except as specified in Paragraph I.A.(5) of this Exhibit "DP") or any amusement/theme park; and receipts of: broadcasters and other transmitters, including radio and television broadcasters/transmitters (such as "free", "pay", "basic cable", and "pay-per-view") that are broadcasting and/or transmitting by any means or devices whether now known or hereafter devised, including over-the-air, cable, closed circuit, satellite, microwave, laser, and the like; book or music publishers; wholesale or retail distributors, licensors, or sellers of Home Versions; record or tape producers, distributors, or stores; and merchandisers or any other similar users. The receipts of each such entity are excluded whether or not such entity is owned, operated, or controlled by PPC.

(2) Amounts collected as taxes or for payment of taxes, such as admission, sales, use, or value added taxes.

(3) Film rental contributed to charitable organizations, including by waiving revenues generated by charity ticket sales at a premiere.

(4) Receipts from remakes, sequels, TV series, or other derivative uses of Picture other than as specified in Paragraph II.A of this Exhibit "DP".

(5) Salvage value or receipts derived from the sale or other disposal of print stocks, stock footage, stills, props, sets, wardrobe, or other items related to the production of the Picture.

## III.   DISTRIBUTION FEES.

PPC shall retain as its distribution fee for the Picture the following percentages of Gross Receipts:

A.   Theatrical.

30% U.S. and Canada

35% U.K.

40% Non-U.S., Non-Canada, Non-U.K.

15% Flat Sales

8

CONFIDENTIAL                                                            PPC-GRAY-0000230

B.    Non-Theatrical.

15% Worldwide

C.    Free TV.

25% U.S. Network (a network is defined as ABC, CBS, NBC, or Fox)

35% U.S. Syndication and Canada

40% Non-U.S., Non-Canada

D.    All Other.

The theatrical fee for the applicable Territory shall be applicable except no such fee shall be applied against infringement recoveries, subsidies, or Schedule A royalties included in Gross Receipts.

E.    Fee Computation.

For purposes of computing PPC's distribution fee Gross Receipts excludes all items specified in Paragraph II.A.(4), (6) and (7) of this Exhibit "DP".

IV.   DISTRIBUTION COSTS.

PPC shall deduct from Gross Receipts the aggregate of the following costs, expenses, and charges paid or incurred by PPC or a Subdistributor (collectively, the "Distribution Costs"):

A.    Conversion.

Costs, discounts, and expenses incurred in the Conversion and remittance of revenue from outside the U.S. to the U.S., including costs of contesting imposition of restricted funds.

B.    Checking.

Costs of checking theatre attendance, subscribers, and receipts and of investigating unauthorized usage of the Picture, whether services are performed or invoiced by PPC employees or other Persons.

9

CONFIDENTIAL

PPC-GRAY-0000231

C.    Collections.

Costs incurred in connection with collection of Gross Receipts, including attorney and auditor fees, and costs and liabilities incurred in connection therewith.

D.    Licenses.

All licenses, duties, fees, or any other amounts required to permit exploitation of the Picture, including exploitation of the Picture as formatted and exhibited in premium, special or enhanced non-standard cinema auditoriums or venues (e.g., IMAX, 4DX, D-Box, Escape, etc.) by any methods, means, technologies, systems or processes whether now known or hereafter devised.

E.    Taxes.

Taxes and governmental fees of any nature and however characterized (other than PPC or Subdistributor corporate income taxes), including the costs of contesting the imposition of such taxes and fees, and the interest and penalties that may be imposed thereon, whether imposed directly or indirectly on the Picture or any part thereof (including the employer's share of payroll taxes with respect to deferred or contingent compensation) or on the Gross Receipts or the license, distribution, or exhibition of Picture, or on the collection, conversion, or remittance of monies connected with the Picture.

F.    Residuals.

Costs incurred and payments computed in accordance with collective bargaining agreements by reason of or as a condition to use or to exhibit the Picture. To the extent such payments are made to or on behalf of Participant, such payments shall be deemed a credit against any contingent compensation payable to Participant under this Agreement to the extent not prohibited by the applicable collective bargaining agreement. Any contingent compensation payments made to Participant under this Agreement prior to payment of residuals are deemed a credit against such residuals to the extent not prohibited by the applicable collective bargaining agreement. In neither event may any such credit, when applicable, be deducted a second time against Participant.

10

CONFIDENTIAL                                                                    PPC-GRAY-0000232

G.  Trade Dues.

An allocable portion of dues and assessments, including legal fees, costs, and contributions, to the MPAA, the AMPTP, or similar organizations throughout the world.

H.  Ad Costs.

The costs of advertising, promoting, exploiting, and publicizing the Picture (collectively "Ad Costs"), including the costs of ad space, ad time, physical material used for production of or broadcasting ads and commercials, shipping, integrating, and monitoring of ads and commercials, and preparation and distribution of ad and promotional material; travel and business expenses of PPC advertising and marketing executives and employees in connection with the Picture and personalities connected to Picture; salaries and/or fees and travel and business expenses of advertising personnel, publicists, press representatives, and field exploitation persons appropriately allocated to the Picture; previews; screenings; premieres; entertainment of press and personalities; research and tests of ad concepts and effectiveness; press books and kits, trailers, stills, and other accessories and publicity releases; advertising allowances to theatres or other exhibitors regardless of how effected; other advertising and publicity costs whether directed to the consumer or the exhibitor; institutional costs; and an administrative charge (so-called "Ad Overhead") equal to 10% of all such costs under this Paragraph IV.H. PPC advertising facilities and advertising employees (including field publicists and creative advertising personnel) shall be used to the extent they reasonably meet advertising requirements, and all charges for the applicable facilities or services shall be included as an advertising cost in accordance with the PPC facilities and service charges in effect at the time of use.

There shall be included in such Ad Overhead the salaries of any executive officer or administrative employee of PPC.

Any rebates, refunds, discounts, or other sums paid back to PPC directly in connection with such advertising costs shall be credited back to such advertising costs.

I.  Prints.

Costs of prints and audiovisual cassettes, discs, or any similar devices embodying copies of the Picture (which, for clarity, includes so-called virtual print fees), including the laboratory costs and the costs of labor, service and materials, titles, discs, dubbing, subtitling, gauge

11

CONFIDENTIAL                                                                                    PPC-GRAY-0000233

reductions, inspection, repair, shipping, storage, delivery, and insurance thereon.

J.    Transportation.

The costs of transportation, shipping, reels, and containers, and related charges, to the extent not covered under Paragraph IV.H or Paragraph IV.M.

K.    Claims.

Costs of claims and litigation (such as infringement, unfair competition, anti-trust, privacy, and defamation) arising out of distribution of the Picture, including attorney and auditor fees.

L.    Copyright, Trademark, and Patent Costs.

Copyright, trademark, and patent costs in connection with the Picture and the protection of such copyrights, trademarks, and patents, including royalties payable to manufacturers of sound recording and reproduction equipment, to the extent not included in the Cost of Production.

M.    Other Versions.

Costs to make, deliver, and use Foreign audiovisual cassettes, discs, or any similar devices, or any other media versions of the Picture, or the titles thereof, or to make changes required by censorship or rating considerations, to the extent not included in the Cost of Production.

N.    Insurance.

Costs of insurance coverage for any risk of loss with respect to the Picture, to the extent not included in the Cost of Production.

O.    General.

All other costs customarily incurred in connection with the distribution and exploitation of motion pictures or customarily treated as a cost of distribution, and which are not included in the Cost of Production.

12

CONFIDENTIAL                                    PPC-GRAY-0000234

V.   NEGATIVE COST.  "Negative Cost" shall mean all of the following:

A.   Cost of Production.

(1)   The "Cost of Production" is the aggregate of all costs, charges, claims, and expenses paid or incurred in connection with the development, production, and delivery of the Picture and its trailer, including payments required to be made at a later date following production of the Picture, determined in the customary manner PPC accounts for production costs at the time the Picture is produced.  All charges in connection with the use of PPC Studio facilities shall be included in the Cost of Production in accordance with the PPC facilities and fringe charges in effect at the time of production.   Insurance recoveries related to items in the Cost of Production shall be credited to the Cost of Production.  Any tax credits, rebates, or other production-based or location-based incentives (net of costs), received by PPC that relate solely to the Picture (and for which the Picture qualifies) shall be credited to the Cost of Production, subject to any claims of tax authorities or taxpayers involved in claiming such production-based and/or location-based tax credits or incentives.

(2)   Participations in Gross Receipts shall be deemed included in the Cost of Production regardless of whether the obligation is fixed or dependent upon Gross Receipts, provided that participations in Gross Receipts shall be included in the Cost of Production only to the extent that the PPC obligation to pay said participation accrues before any Defined Proceeds are payable pursuant to this Exhibit.

(3)   There shall be no double deductions; i.e., any item in the Cost of Production cannot again be charged as a Distribution Cost and vice versa.

B.   Administrative Charge.

A PPC administrative charge (so-called "Overhead") in an amount equal to fifteen percent (15%) of the aggregate of the amounts set forth in Paragraphs V.A.(1) and (2) above shall accrue and be included in the Cost of Production concurrently with the incurring of the respective items of direct cost included in the Cost of Production of the Picture.

13

CONFIDENTIAL                                                                      PPC-GRAY-0000235

C.   Finance Charge.

    (1)   A finance charge (so-called "Interest") on the aggregate of the amounts set forth in Paragraphs V.A and V.B above, which shall be deemed to be at an annual rate equal to 125% of U.S. prime rate of JP Morgan Chase Bank, as the same may vary from time to time, such Interest commencing from the respective dates on which amounts chargeable to the Cost of Production are incurred or paid and continuing until the mid-point of the reporting period with respect to which said amounts are recouped as herein provided.

    (2)   If any principal photography of the Picture occurs outside of the U.S., then in lieu of the rate specified above the rate of Interest with respect to funds expended in any country outside the U.S. shall be at an annual rate equal to 125% of the prime rate, or equivalent thereof, charged by the principal bank in the applicable country, as the same may vary from time to time.

D.   Overbudget Add-On.

The amount by which the Cost of Production pursuant to Paragraph V.A above (and from which is excluded any financing fees, bond fees, and contingency) is greater than the aggregate of: (i) $300,000 and (ii) the Picture's -approved budget (and from which is excluded any financing fees, bond fees, and contingency) shall be added again as a part of the Cost of Production.  Such excess amount shall not itself bear Interest. Costs incurred due to force majeure, written direction from PPC, and retroactive increases to scale personnel under collective bargaining agreements are excluded from this overbudget computation.

VI.   REPORTING.

A.   General.

PPC shall render statements to Participant showing in summary form the appropriate calculations relating to treatment of Gross Receipts. Such statements may be on a billing or collection basis as PPC may elect from time to time.  Whenever Gross Receipts are derived or costs are incurred in connection with transactions involving the Picture and other motion pictures, PPC shall allocate such costs and Gross Receipts based on its reasonable opinion.

14

CONFIDENTIAL

PPC-GRAY-0000236

B.    Books.

PPC shall keep books of account with respect to the distribution of the Picture. Summary books of account shall be located at PPC's Los Angeles offices. Books of account, to the extent they have not become incontestable or have not been previously examined, may be examined at Participant's expense in Los Angeles or wherever such records are customarily kept, once in each 12-month period (commencing from the issuance of the first statement to Participant) by a national firm of reputable CPA's, the selection of which is subject to PPC approval, not to be unreasonably withheld, and the signing of PPC's confidentiality agreement. No such examination may continue beyond a period of sixty (60) days after commencement of the examination. A copy of the report of such examination shall be delivered to PPC at such time it is made available to Participant.

C.    Withholdings.

All amounts payable to Participant under this Agreement shall be subject to all laws and regulations now or hereafter in existence requiring the reporting, deduction or withholding of payments for income or other taxes payable by or assessable against Participant or as otherwise provided by law. PPC shall have the right to make such deductions and withholdings. The payment of deductions and/or withholdings to the applicable governmental agency (in accordance with PPC's good-faith determination of such laws and regulations) shall constitute payment of such amounts to Participant. PPC shall not be liable to Participant for the making of such payments, reports, deductions, and/or withholdings; instead, Participant shall make and prosecute any and all claims with respect to such matters directly with the governmental agency having jurisdiction over the claims.

D.    Statements.

For the first two (2) years after the first general release of the Picture, as that date is established by PPC and reflected in its records in its usual fashion, PPC shall give Participant quarterly statements relating to the distribution of the Picture. Such statements shall be for the applicable reporting period and shall be given within sixty (60) days after the end of the applicable reporting period. Statements shall be given semi-annually for the next two (2) years thereafter, and then annually thereafter. Such semi-annual and annual statements shall be given within one hundred twenty (120) days after the end of the applicable reporting period. All statements shall be accompanied with payment of the amount, if any, shown due Participant.

15

CONFIDENTIAL                                                                                          PPC-GRAY-0000237

Notwithstanding the foregoing: (a) delivery of a statement may occur as late as January 15 for any statement that otherwise would be required to be delivered by a date during the period from the prior December 15 through January 8; and (b) if no compensation is due, then a statement shall be given only on Participant's written request, provided such request is made at least one (1) year after delivery of the last such statement.

If the Picture is generally re-issued in the U.S. theatrically, then PPC shall resume quarterly statements for one (1) year from the date of such re-issue. If the Picture is broadcast on prime-time network television in the U.S., PPC shall issue a statement relating to distribution of the Picture within sixty (60) days after the end of the applicable quarterly reporting period, accompanied by payment, if any, shown due Participant.

E.    Incontestability.

Statements shall be subject to correction or amendment at any time. PPC shall keep the books of account referred to in Paragraph B above for at least twenty-four (24) months after the last transaction reflected in a statement for the first time. Each statement shall be deemed conclusively correct and binding on Participant as to the transactions reflected therein for the first time on the expiration of a period of twenty-four (24) months after the date sent. The inclusion of any item from a prior statement on a subsequent statement shall not render such prior-appearing item contestable or recommence the running of the applicable 24-month period with respect thereto. If Participant serves written notice on PPC within the applicable 24-month period, objecting in specific detail to particular items and stating the nature of the objection, then insofar as such specified items are concerned, statements shall not be deemed conclusively correct and binding.

F.    Address.

All statements shall be deemed sent when mailed to Participant at the then-current address for notices under this Agreement.

G.    Reserves.

PPC shall have the right to establish appropriate reserves and adjust them from time to time for all Distribution Costs, uncollected accounts, or other items that PPC reasonably anticipates will be deductible from Gross Receipts hereunder. PPC agrees to liquidate any reserves hereunder within a reasonable period of time.

16

CONFIDENTIAL                                                    PPC-GRAY-0000238

H.   Tax Credits.

PPC and/or its parent company (Viacom Inc.) shall have the sole right to take the full amount of whatever credits (including investment tax credits), deductions, or other benefits that may be available to them throughout the world, with respect to taxes and excises payable with respect to the Picture or any activity related thereto, without any reporting, credit, or payment obligation to Participant.

I.   Creditor - Debtor.

There is a Creditor-Debtor relationship between PPC and Participant with respect to payment of amounts due Participant under this Agreement, and nothing contained in this Agreement or otherwise shall be construed to create an agency, trust, or fiduciary obligation with respect to such amounts or to prevent PPC from commingling any such amounts with any other funds or to give Participant a lien on the Picture and Participant waives any right to claim to the contrary. PPC's obligation to pay Participant under this Agreement shall not bear interest nor entitle Participant to gains that may accrue to such funds prior to payment to Participant.

VII.   MISCELLANEOUS.

A.   No Representation.

Participant acknowledges that PPC has no obligation to distribute Picture. If it does so, Participant acknowledges that PPC has not made any representations with respect to the amount of Gross Receipts, deferments, or Defined Proceeds, if any, that will or may be derived from distribution of the Picture.

However, subject to PPC's policies and practices regarding release of motion pictures, PPC agrees to give full consideration to distribution of the Picture in all territories throughout the world as soon as reasonably practicable, further subject to the requirements of censorship boards or other authorities or bodies that can affect such distribution and to contingencies beyond PPC's control that may restrict, prohibit, or postpone release or distribution of the Picture.

17

EXHIBIT DP
1-6-2015

CONFIDENTIAL                                                                        PPC-GRAY-0000239

B.    Control of Distribution and Marketing.

(1)    PPC shall have exclusive and perpetual control of the distribution, marketing, advertising, publicizing, exploitation, sale, or other disposition of the Picture. PPC may distribute, exhibit, or otherwise exploit the Picture or refrain from doing so at its absolute discretion; if PPC elects to distribute, exhibit or otherwise exploit the Picture, the manner in which it does so shall not subject it to any liability to Participant of any kind or nature.    PPC may distribute the Picture with other motion pictures whether or not PPC has any ownership interest or participation in such other motion pictures.

(2)    PPC owns all rights to the Picture and the copyrights thereof and to Gross Receipts and Defined Proceeds including the right to hypothecate them and Participant shall have no right, title, or interest therein, except that nothing specified in this Paragraph VII.B.(2) shall release PPC from making payments to Participant to the extent required under this Agreement.

(3)    PPC can make percentage sales or Flat Sales and grant others rights to distribute the Picture on terms determined by PPC, and may make and cancel contracts, adjust and settle disputes, and give allowances and rebates to distributors, licensees, exhibitors, or other Persons, whether or not any such Persons are owned, operated, or controlled by PPC.

(4)    PPC shall have complete discretion in determining the extent, if any, to which it will audit or check payments to PPC or press claims for amounts that, if collected, would become Gross Receipts.

C.    Sale of All Rights.

(1)    If PPC sells all its right, title and interest in Picture (other than through merger or consolidation), Participant may elect that:

(a)    the net sum received by PPC shall constitute Gross Receipts, but the further income of the purchaser would not be included in Gross Receipts, or,

(b)    the sum received by PPC shall not be included in Gross Receipts, and all revenues and expenses of the purchaser relating to the Picture (other than purchase price paid PPC) shall be treated, for purposes of reporting to Participant, as though they were revenues and expenses

18

CONFIDENTIAL                                                                                      PPC-GRAY-0000240

> of PPC, provided that upon assumption by the purchaser of such obligation, the sale shall be deemed a novation and PPC shall thereafter have no obligation of any kind to Participant, provided, however, that PPC is not relieved of its obligations for a period of two (2) years after the sale unless such sale is made to a major U.S. distributor or the sale is made three (3) years or more after the U.S. initial release of the Picture.

(2)    Such election shall be made within seven (7) days after PPC notifies Participant in writing that it proposes to make such sale and identifies the purchaser and purchase price. Participant shall be deemed to have elected alternative (a) above, unless PPC receives written notice of Participant's election of alternative (b) above within seven (7) days after issuance of PPC's notice. If a price change subsequently occurs and it is substantial and adversely affects the elected alternative, the above procedure shall be repeated.

D.    Assignment by Participant.

Participant may assign Participant's right to receive percentage compensation under this Agreement, at any time after the release of the Picture. However, PPC shall only be obligated to honor one such assignment, and then only if it is an assignment of all (as distinguished from part) of Participant's right to receive such percentage compensation thereafter. Nothing herein contained shall be deemed to preclude Participant from making a partial assignment or to preclude the first assignee (of all of Participant's said right) from making a subsequent complete or partial assignment; however, PPC shall not be obligated to pay in accordance with any such partial or subsequent assignment unless a single Person is designated as a disbursing agent, to whom PPC may make all such payments thereafter, regardless of any further assignment(s). PPC's obligation to pay in accordance with any such assignment, or designation of a disbursing agent, shall be further conditioned on PPC's receipt of written notice thereof, in form satisfactory to PPC. PPC's payment in accordance with any such assignment or designation shall be deemed to be the equivalent of payment to Participant hereunder. Participant's rights to examine PPC's books of account shall not be assignable without PPC's prior written consent. PPC shall have first refusal with respect to any proposed assignment of Participant's right to receive percentage compensation hereunder and Participant shall notify PPC of the terms of any such proposed assignment and PPC shall have seven (7) days within which to elect to accept such terms. Participant shall make no change in said terms adverse to Participant's own interest without

19

CONFIDENTIAL                                                    PPC-GRAY-0000241

giving PPC the opportunity to accept such other terms. The preceding two sentences shall not apply to family gifts or transfers by operation of law.

E.    Third Party Beneficiary.

Nothing herein contained shall be deemed to create a third-party beneficiary agreement.

F.    Headings.

Headings are for convenience only and are of no effect in construing contents of this Agreement.

G.    No Partnership/Joint Venture.

PPC shall not be considered a trustee, pledgeholder, fiduciary, or agent of Participant. Nothing herein contained shall constitute a partnership between or joint venture by the parties hereto, or constitute either party the agent of the other. Neither party shall hold itself out contrary to the terms of this Paragraph VII.G and neither party shall become liable by any representation, act or omission of the other contrary to the provisions hereof. The use of terms such as "Gross Receipts" or "Participant" are used solely as a convenience to describe the results of the computations set forth in this Exhibit "DP" and are not intended to create an inference of any relationship other than creditor/debtor with respect to payments, if any, pursuant to such computations or definitions.

H.    Dispute Resolution.

All claims, controversies, or disputes arising out of, in connection with, or relating to this Exhibit "DP" or any reporting or payment relating to the Picture ("Covered Claims") shall be resolved by binding arbitration in Los Angeles, California, in accordance with the provisions of Exhibit "ARB" attached to this Agreement. Any such arbitration shall be limited to the claims, controversies, or disputes with Participant individually. To the full extent permitted by law, (1) no arbitration shall be joined with any other; (2) there is no right or authority for any claims, controversies, or disputes to be arbitrated on a class action-basis or to utilize class action procedures; and (3) there is no right or authority for any claims, controversies, or disputes to be brought in a purported representative capacity on behalf of the general public or any other persons. Participant may bring claims only in an individual capacity, and not as a plaintiff or class member in any purported class representative proceeding. Further, the arbitrator may

20

EXHIBIT DP
1-6-2015

CONFIDENTIAL                                                           PPC-GRAY-0000242

not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding.

VIII.  DEFINITIONS.

A.  Applicable Distribution Fees.

The following applies for purposes of determining distribution fees under Paragraphs III.A, B, C, and D of this Exhibit "DP":

(1)  Theatrical.

"Theatrical Exhibition" shall mean exhibition in theatres; on airlines and other forms of transportation; armed forces, V.A., Red Cross and similar institutional use; pay, cable, and subscription television; audio visual cassettes, discs, or similar devices other than Home Versions; and for the transmission of the Picture's audio and visual image by any means or media, whether now known or hereafter devised.

(2)  Non-Theatrical.

"Non-theatrical Exhibition" shall mean exhibition in 16mm, 35mm gauge or lower in or by schools, hospitals, college campuses, prisons, individuals, oil companies, public libraries, railroads, private institutions, social clubs, churches, and similar usages, but excluding Theatrical Exhibitions.

(3)  Free TV.

(4)  Flat Sale.

"Flat Sale" shall mean a license by PPC to any Person for exploitation of the Picture, in any and all media, means, and manner, whether now known or hereafter devised, including theatrical, free TV, cable TV, pay TV, and audiovisual cassette, disc, or other similar device, for a period in excess of one (1) year for a territory or area in consideration of the payment of a specified amount rather than a percentage of receipts of such Person and without any obligation of such Person to account for or report to PPC the amount of any proceeds or expenses of such exploitation.

21

EXHIBIT DP
1-6-2015

CONFIDENTIAL                                                                 PPC-GRAY-0000243

B.    Conversion.

"Conversion" shall mean the conversion of Foreign currency into U.S. dollars made at the average weighted rate of exchange utilized by PPC for all motion pictures for which remittances have been received by PPC in the U.S. during the applicable reporting period.

C.    Film Rental.

"Film Rental" shall mean amounts received by PPC or a Subdistributor for the license or privilege to exhibit the Picture (including trailers thereof) in any and all media, means, and manner, whether now known or hereafter devised, but excluding amounts received from Flat Sales, Non-Theatrical Licensee exhibitions, Royalties pursuant to Schedule A, advance payments or security deposits (unless earned by exhibition or broadcast or unless forfeited), and refunds, rebates, or adjustments granted other Persons by PPC or a Subdistributor.

D.    Gross Receipts.

"Gross Receipts" shall mean the amounts set forth in Paragraphs II.A.(1) through II.A.(7) above, subject to the exclusions set forth in Paragraph II.B above, and subject to the following:

(1)    Amounts are not deemed Gross Receipts or received unless paid in U.S. dollars in the U.S. or payable in a Foreign currency that is not restricted and could be remitted in U.S. dollars to the U.S., if PPC, in the exercise of reasonable discretion, elects to do so, it being agreed that if Restricted Funds are used by PPC in the Foreign territory involved, such sums shall be credited to the Gross Receipts of the Picture.  Gross Receipts from armed forces exhibitions shall be subject to the applicable distribution fees in Paragraph III.A hereof with respect to the territories where such exhibitions shall occur.  Gross Receipts from airlines and other transportation media exhibitions shall be subject to the applicable distribution fees in Paragraph III.A hereof with respect to the territories where the agreements relating to such exhibitions are entered into.

(2)    Gross Receipts from Non-Theatrical Licensee exhibition shall mean the net amount of receipts received by PPC from Non-Theatrical Licensees, and such net amount shall be subject to the distribution fees in Paragraph III.B hereof.

22

EXHIBIT DP
1-6-2015

CONFIDENTIAL                                                                                    PPC-GRAY-0000244

E.    Here.

"Here" as prefix in words such as hereof and hereunder refers to this Agreement.

F.    Home Versions.

"Home Versions" shall mean audiovisual cassettes, discs, or any similar devices (including any functionally equivalent devices, means, or methods, in whatever form [such as VHS, DVD, and VOD], whether now known or hereafter devised, and however delivered, transmitted, or made available to the viewer) through which the Picture is available for viewing at a time or times selected by the individual viewer.

G.    Includes.

"Includes" (and equivalents "included" or "including" or "such as") are illustrative and not limitative.

H.    Non-Theatrical Licensee.

A "Non-Theatrical Licensee" shall mean a Person licensed by PPC (such as Films, Inc. or any similar organization) for non-theatrical exhibition.    Such Non-Theatrical Licensee shall not be deemed a Subdistributor, and the receipts and expenses of any such Non-Theatrical Licensee shall not be treated as though receipts and expenses of PPC.

I.    Or.

"Or" is not only disjunctive but also conjunctive.

J.    Participant.

A "Participant" shall mean a Person who has entered into this Agreement with PPC.

K.    Person.

A "Person" shall mean any corporation, partnership, or other business entity or a natural person.

23

CONFIDENTIAL                                    PPC-GRAY-0000245

L.   PPC.

"PPC" shall mean Paramount Pictures Corporation, a Delaware corporation, and its divisions and owned or controlled subsidiaries, but in any event "PPC" shall not include exhibitors or others who may actually exhibit the Picture to the public (except for so-called "four wall" exhibition as provided in Paragraph II.A.(5) above); amusement/theme parks; radio or television broadcasters and other transmitters; cable operators; distributors or retailers of Home Versions (except for Paramount Home Entertainment); book or music publishers; phonograph record producers or distributors; merchandisers, etc. (whether or not any of the foregoing are subsidiaries, divisions, or affiliates of PPC).

M.   Restricted Funds.

(1)   "Restricted Funds" shall mean those amounts that would otherwise be included in Gross Receipts but are not because they are payable in Foreign currency, and shall not be deemed Gross Receipts hereunder for any purpose unless and until they have been received by PPC in U.S. dollars in the U.S. or unless used by PPC in the Foreign territory involved.

(2)   As and when percentage compensation becomes payable to Participant under this Agreement, Participant may notify PPC in writing that Participant elects to require settlement of Participant's share of Restricted Funds remaining in any Foreign country in the currency of such country. Such notice shall also include a designation of a bank or other representative in such country to whom payment may be made for Participant's account. Such payment shall be made to such representative as and when Participant has obtained any required permission. Such payment shall be made at Participant's expense and shall, to the extent thereof, be deemed the equivalent of the inclusion in Gross Receipts of the restricted funds of which such payment represents Participant's share, and shall satisfy PPC's obligations to Participant with respect to such Restricted Funds and Participant's share thereof.

(3)   On Participant's written request, PPC shall report to Participant the amount of Restricted Funds (if any) which under this Paragraph VIII.M have not yet been included in Gross Receipts as of the closing date of the most recent statement which has then been furnished to Participant under Paragraph VI.D hereof.

24

CONFIDENTIAL                                                                 PPC-GRAY-0000246

N. Royalties.

"Royalties" shall mean the amounts set forth in Schedule A of this Exhibit "DP".

O. Subdistributor.

A "Subdistributor" shall mean a Person licensed by PPC for the purpose of distributing the Picture for exhibition in theatres and for broadcasting over television stations in a specific area, with an obligation to report Gross Receipts and expenses to PPC. Subject to the provisions relating to Restricted Funds set forth in Paragraph VIII.M hereof, all such receipts and expenses shall be treated as though receipts and expenses of PPC when reported to PPC, and the licensing or other arrangements between PPC and each such Subdistributor shall be of no relevance hereunder. United International Pictures shall be deemed a Subdistributor.

P. Territory. "Territory" shall mean any or all of the following:

(1)     "U.S." shall mean the United States, together with any other countries that are licensed by or through the distributing organization(s) servicing the U.S. for PPC.

(2)     "Canada" shall mean Canada and any other countries licensed by or through PPC's Canadian distribution organization.

(3)     The "United Kingdom" ("U.K.") shall mean the United Kingdom of Great Britain and Northern Ireland, Republic of Ireland, Channel Islands, Isle of Man, Gibraltar, Malta, and ships and aircraft flying the British flag or Republic of Ireland's flag, and British camps wherever situated.

(4)     "Foreign" shall mean all countries other than the U.S., plus any other areas in the universe.

(5)     All of the foregoing references to countries include their territories, possessions, and political subdivisions.

Q. This Agreement.

This "Agreement" shall mean the agreement to which this exhibit is attached, this exhibit, and any other attached amendments, exhibits, and schedules.

25

CONFIDENTIAL                                                           PPC-GRAY-0000247

## SCHEDULE A

### ROYALTIES REFERRED TO IN II.A.(7) OF THIS EXHIBIT "DP"

1.  If Participant is not otherwise entitled to receive any composer's or lyricist's royalties or otherwise share in music publishing royalties, then, insofar as PPC shall acquire initially for or in connection with the Picture, any proprietary rights in musical compositions written for or previously unexploited musical compositions first used in or in connection with the Picture, PPC may license any or all of such rights to a music publishing company of its choosing, including a PPC subsidiary or affiliate company, provided that such license agreement shall require payment by said publishing company of the following royalties (to the extent such publishing company controls, as a result of its license with PPC, the particular rights for the country or countries involved), which shall be included in Gross Receipts of the Picture, without the application of distribution fees:

    (a)  Piano or orchestration copies sold in U.S. and Canada - two cents (2¢) per copy;

    (b)  Net receipts of publisher from performing fees, excluding U.S. and Canada - sixteen and two-thirds percent (16-2/3%); and

    (c)  Net receipts of publisher worldwide from all sources other than the types listed in (a) and (b) - sixteen and two-thirds percent (16-2/3%).

2.  If Participant is not otherwise entitled to receive any royalties in respect of any of the Picture's music-oriented soundtrack phonograph records, then insofar as PPC shall have rights to the use and exploitation of such music-oriented phonograph records, PPC agrees that:

    (a)  If PPC grants such phonograph record rights to any record company not subsidiary to or affiliated with PPC, PPC shall endeavor to obtain the best available royalties ("Overall Royalty") in good-faith negotiation with such non-affiliated record company. No royalties shall be payable hereunder on any uses or copies of any such phonograph records for which a corresponding earned royalty is neither paid nor credited to PPC's account. There shall be deducted from said Overall Royalty to PPC, any payments (other than mechanical royalty payments) required to be made with respect to any of the Picture's music-oriented soundtrack phonograph records and/or the recordings embodied thereon ("Direct Royalties"). The royalties remaining shall be subject to Paragraphs 2.(c) and 2.(d) below.

    (b)  The following shall apply if PPC grants such music-oriented soundtrack phonograph record rights to any record company which is

26

CONFIDENTIAL                                        PPC-GRAY-0000248

a subsidiary or affiliate of PPC ("affiliated record company"). Subject to the remaining provisions hereof, with respect to U.S. net top-line, normal retail channel sales in standard compact disc ("CD") configuration of any music-oriented soundtrack album phonograph record authorized by PPC to be identified as a musical soundtrack album for the Picture, PPC shall obtain an Overall Royalty which shall be not less than: five percent (5%) of the retail-oriented royalty base price or an equivalent royalty based on an otherwise-oriented royalty base price (whichever method of computation is customarily used by the affiliated record company at the time involved, it being understood that for the purpose hereof, any royalty base price calculated using an "uplift factor" from a lower figure shall be deemed a retail-oriented royalty base price), less applicable taxes and packaging deductions. Such Overall Royalty shall be subject to the same computations, definitions, deductions, pro-rationing, reductions and shall be otherwise determined in accordance with the usual practices of the affiliated record company as of the date of PPC's agreement with the affiliated record company. No royalties shall be payable hereunder on any uses or any copies of any such phonograph records for which a corresponding earned royalty is neither paid nor credited to PPC's account. There shall be deducted from said Overall Royalty any Direct Royalties. The royalties remaining shall be subject to Paragraphs 2.(c) and 2.(d) below.

(c)     To the extent not already treated as Picture production costs or recouped from Direct Royalties, costs incurred by PPC and/or costs chargeable by the record company/affiliated record company against PPC in connection with any such phonograph record(s) shall be deducted from such royalties, if any, as would otherwise be included in the Gross Receipts of the Picture under this Paragraph 2.

(d)     After deduction of Direct Royalties from the Overall Royalty (per Paragraph 2.(a) or 2.(b), as applicable) and subject to 2.(c), the then remaining royalties to PPC shall be included in the Gross Receipts of the Picture without application of a distribution fee.

(e)     Whether a record company is a subsidiary or affiliate of PPC shall be determined as of the date of the applicable music-oriented soundtrack phonograph record agreement.

3.     If Participant is not otherwise entitled to share in receipts from Home Versions, then a royalty in an amount equal to twenty percent (20%) of sums received by PPC from the sale or license of Home Versions shall be included in the Gross Receipts of the Picture, and no Distribution Costs shall be charged against said royalty except for those costs described in Paragraphs IV.F and IV.G. of this Exhibit "DP".

27

CONFIDENTIAL                                                                              PPC-GRAY-0000249

4.    If Participant is not otherwise entitled to share in receipts from merchandising, then a royalty in an amount equal to fifty percent (50%) of the sums received by PPC from merchandising (including sale or license of souvenir programs and booklets) shall be included in the Gross Receipts of the Picture, and no costs shall be charged against said royalty except for out-of-pocket costs (including royalties to third parties) of such merchandising.

5.    If Participant is not otherwise entitled to share in receipts from PPC's exercise of book publication rights, then a royalty in an amount equal to eighty-five percent (85%) of the sums received by PPC from PPC's exercise of book publication rights, to the extent acquired, shall be included in the Gross Receipts of the Picture, and no costs shall be charged against said royalty except for out-of-pocket costs (including royalties to third parties) of such exercise of book publication rights.

* * *

28

CONFIDENTIAL