UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUN GRAY, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>PARAMOUNT GLOBAL, a Delaware corporation; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; PARAMOUNT STREAMING SERVICES INC., a Delaware corporation; and DOES 1-10,<br><br>    Defendants. | Case No. 1:25-cv-03484-JSR |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

                                                                                                       **Page**

I.     INTRODUCTION .................................................................................................... 1

II.    ARGUMENT ........................................................................................................... 1

        A.     Gray's Own Pleading Betrays A Lack Of Mutual Intent To Be Joint Authors. ........................................................................................................ 1

               1.     The Joint-Authorship Test Is Settled And Amenable To This Court's Resolution. ..................................................................................... 1

               2.     Gray Fails Each Prong Of The Mutual Intent Test. ................................... 4

               3.     Gray's Conclusory Agency Pleading Does Not Aid His Deficient Claims. ....................................................................................................... 5

        B.     The Infringement Claim Fails For Lack Of Independent Copyright Protection. ............................................................................................................ 6

        C.     The Infringement Claim Fails Because Gray At Minimum Implied A License. ............................................................................................................... 9

III.   CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015) ............................................................................................... *passim*

*2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*,
   642 F. Supp. 2d 226 (S.D.N.Y. 2009) ............................................................................................9

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) ....................................................................................................3, 5

*Astroworks, Inc. v. Astroexhibit, Inc.*,
   257 F. Supp. 2d 609 (S.D.N.Y. 2003) ............................................................................................9

*BTE v. Bonnecaze*,
   43 F. Supp. 2d 619 (E.D. La. 1999) ...............................................................................................2

*Childress v. Taylor*,
   945 F.2d 500 (2d Cir. 1991) ..................................................................................................1, 2, 3

*Fontana v. Harra*,
   2013 WL 990014 (C.D. Cal. Mar. 12, 2013) ................................................................................9

*Heger v. Kiki Tree Pictures, Inc.*,
   2017 WL 5714517 (C.D. Cal. July 24, 2017) ...............................................................................4

*Maurizio v. Goldsmith*,
   84 F. Supp. 2d 455 (S.D.N.Y.), *aff'd*, 230 F.3d 518 (2d Cir. 2000) .........................................2, 7

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
   531 F.3d 962 (9th Cir. 2008) .........................................................................................................4

*Royal Canin U.S.A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025) ......................................................................................................................10

*SHL Imaging, Inc. v. Artisan House, Inc.*,
   117 F. Supp. 2d 301 (S.D.N.Y. 2000) ............................................................................................9

*Sys. XIX, Inc. v. Parker*,
   30 F. Supp. 2d 1225 (N.D. Cal. 1998) ...........................................................................................2

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998) ................................................................................................ *passim*

**Statutes**

17 U.S.C. § 101 ...................................................................................................................................8

17 U.S.C. § 201(b) ..............................................................................................................................3

## I. INTRODUCTION

Second Circuit precedents preclude Gray's claims for joint authorship and infringement alike. Gray's laser-focus on dodging those precedents only reinforces that his claims fail as a matter of law on the governing tests. First, Gray's pleading reveals he and PPC lacked the requisite mutual intent to be joint authors. That outcome aligns with common sense: Gray did not obtain an equal undivided interest with PPC in its blockbuster film *Maverick* by purportedly contributing fifteen scenes (out of hundreds) to an interim screenplay draft while assisting one of PPC's many work-made-for-hire screenwriters for a few months. Second, the scattered scenes Gray purportedly drafted are not entitled to standalone copyright protection separate from the unitary work in which they were embodied, foreclosing his infringement claim—and even then, he at minimum granted an implied license for those scenes' use.

## II. ARGUMENT

**A. Gray's Own Pleading Betrays A Lack Of Mutual Intent To Be Joint Authors.**

**1. The Joint-Authorship Test Is Settled And Amenable To This Court's Resolution.**

"A co-authorship claimant bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors." *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998).

Gray himself recites this two-prong test as the governing "Second Circuit precedent," citing *Thomson* and *Childress v. Taylor*, 945 F.2d 500 (2d Cir. 1991). Opp. 6. But he then backpedals, remarkably claiming it applies "only where the copyright claimant does not occupy a traditional authorship role contemplated by Congress"—and that he held such a "traditional" role. Opp. 12. In support, he cites a single out-of-circuit district court decision that traded the test of *Childress*, as to the "traditional" co-author relationship of "producer/performer," for a more basic inquiry into whether "the parties prepared the [work] 'with the intention that their contributions be merged into

1

inseparable or interdependent parts of a unitary whole.'" Opp. 12; *Sys. XIX, Inc. v. Parker*, 30 F. Supp. 2d 1225, 1228 (N.D. Cal. 1998). But that is not the law in the Second Circuit, which has never cabined the intent-to-be-joint-authors requirement to non-standard authorship relationships and has repeatedly eschewed a test based solely on putative co-authors' intent that their contributions be merged into a unitary whole. *Childress*, 945 F.2d at 507; *Thomson*, 147 F.3d at 200. Indeed, in *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 255-56, 258-59 (2d Cir. 2015), the Second Circuit applied the *Thomson/Childress* test to a film director, despite noting that, generally speaking, a film director is "potentially one of its most important authors." *See also, e.g.*, *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 465 (S.D.N.Y.), *aff'd*, 230 F.3d 518 (2d Cir. 2000) (mutual intent to be joint authors required even where putative joint author claimed to have written two chapters of book); *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 621, 623-24 (E.D. La. 1999) (applying *Childress* test where band member claimed joint authorship based on contribution of "harmony, lyrics, percussion and song rhythms, melody and song and musical structure" to songs).

In fact, the Second Circuit rejected an incarnation of this argument in *Thomson* itself, where the plaintiff argued "*Childress*' stringent mutual intent standard is properly limited, by its facts, to cases involving claimants who have made 'minimal contribution[s] to the writing of a work.'" 147 F.3d at 202. There, on top of developing the storyline, Thomson had contributed lines verbatim to the *Rent* script, and argued her "*major* contribution of copyrightable expression to *Rent*, by itself, is evidence of Larson's intent that she be a co-author." 147 F.3d at 197, 201 n.14, 202. The Second Circuit disagreed, explaining that "the contribution even of significant language to a work does not automatically suffice to confer co-author status on the contributor," and "a specific finding of mutual intent [to be co-authors] remains necessary." *Id.* at 202.

Gray's other efforts to escape the governing standard likewise fail. Gray calls it an "open

2

question *whose* intent matters for the joint authorship analysis," Opp. 6, but that is false. The relevant intent is that of the putative joint authors, as stated directly in *Thomson*, 147 F.3d at 200, in *Childress*, 945 F.2d at 508, and all other relevant authority. Here, the putative joint authors are PPC and Gray, so it is their intent that matters. Gray claims the test is different because PPC's authorship comes by way of work-made-for-hire agreements, Opp. 6-7, but that is immaterial. PPC is the author *ab initio* of the contributions made for it for hire for all copyright purposes. 17 U.S.C. § 201(b). Thus, PPC did not "author[] nothing," Opp. 7; it authored *everything* (or virtually everything), since every contributor apart from Gray made their contributions as work-made-for-hire, Compl. ¶ 7. Gray contends that *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), suggests otherwise, Opp. 7, but it does not: the Ninth Circuit dispensed with that plaintiff's joint authorship claim upon finding that "*Warner Brothers* [the author via work-made-for-hire] did not intend to share ownership with Aalmuhammed." 202 F.3d at 1236 (emphasis added).

Gray also invents a "circuit split" on whether "control" is relevant to the joint authorship analysis, claiming it is part of the Ninth Circuit's test but not the Second Circuit's. Opp. 10 n.4. That too is false. The Second Circuit's "decisionmaking authority" prong aligns with the Ninth Circuit's "control" prong, which is why Paramount discussed them in tandem. Mot. 6-9; *Thomson*, 147 F.3d at 202-03 (citing "right to control" the work as example of decisionmaking authority); *Casa Duse*, 791 F.3d at 260 ("decisionmaking authority…refers to the parties' relative control 'over what changes are made and what is included in a work'"). Both formulations turn on a contributor's authority (or lack thereof) over what content and what changes ultimately make their way into the final work. *Thomson*, 147 F.3d at 202-03; *Aalmuhammed*, 202 F.3d at 1234-35.

Finally, Gray tries to rescue his claims (for now) by urging this Court not to address joint authorship on a motion to dismiss. Opp. 9. But there is no hard-and-fast rule, as his own authority

3

concedes. As with any claim, what matters is the pleading. Where Gray's own allegations not only fail to state a claim for joint authorship, but outright preclude a joint authorship finding, there is no basis to allow his deficient claims to proceed. *E.g.*, *Heger v. Kiki Tree Pictures, Inc.*, 2017 WL 5714517, at *5 (C.D. Cal. July 24, 2017) (noting joint authorship "is often, but not always, ill-suited to resolution on a motion to dismiss," yet granting motion to dismiss because all factors weighed against plaintiff such that court "cannot plausibly infer that [plaintiff] is a joint author").

### 2. Gray Fails Each Prong Of The Mutual Intent Test.

On the actual test for mutual intent—covering the putative co-authors' (i) decisionmaking authority, (ii) billing, and (iii) written agreements with third parties, *Thomson*, 147 F.3d at 201-05—Gray has little to say. It conclusively refutes joint authorship here. Mot. 6-14.

Gray has no answer for his lack of decisionmaking authority over the works to which he lays claim: the Screenplay and *Maverick*. He contends authority over *his contributions* suffices (to an *interim* draft, no less), Opp. 13-14, but that is not the standard.[1] As *Thomson* instructs, decisionmaking authority asks who has control over "what changes are made and what is included in a work." 147 F.3d at 202-03. Thus, although the dramaturg in *Thomson* "contribute[d] actual language" to the script, this factor still weighed against her joint authorship claim where the playwright had sole discretion over "whether any contribution she might make would go into the script." *Id.* at 203. Other courts are in accord. Mot. 8-9.[2] Gray also urges the Court to overlook

---

[1] This case illustrates why. The Gray Scenes were not accepted as drafted, and to the contrary were reshaped, edited, and in some instances scrapped altogether. Mot. 7 n.4. *Not one* of the Gray Scenes appears as originally drafted in the final Screenplay. *Compare* Lens Decl. Ex. E *with id.* Exs. G-U. Gray does not contest consideration of these incorporated-by-reference documents on this motion (or Paramount's broader request for judicial notice).

[2] Gray tries to sidestep *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008), because it concerned a work governed by the 1909 Act, but that distinction is immaterial. The Ninth Circuit equated the 1909 and 1976 Acts' treatment of joint works, and proceeded to assess joint authorship "under the more fully developed rubric of the 1976 Act." *Id.* at 968.

4

that his involvement fell in the middle of three waves of screenwriters, because the Gray Scenes "predominate" over the broader works, Opp. 13, but that is neither material to the decisionmaking prong nor accurate (the Complaint alleges no such "predominance"; these fifteen scenes are dwarfed by hundreds of others in the incorporated-by-reference Screenplay, Lens Decl., Ex. E; and some have no colorable analogue anywhere in the Screenplay, *id*. Exs. I, K).

Gray then challenges the probativeness of his admitted lack of credit on the Screenplay and *Maverick*, because he claims he *should* have been credited. Opp. 14. But whether he likes it or not, the Second Circuit has "deemed the way in which the parties bill or credit themselves to be significant." *Thomson*, 147 F.3d at 203. This factor is relevant precisely because it provides "a window on the mind of the party who is responsible for giving the billing or the credit." *Id.*

Gray next rebuffs the significance of PPC's work-made-for-hire agreements with *every other contributor* to *Maverick*, Opp. 14-15, but such third-party agreements are another well-established prong of the test. *Thomson*, 147 F.3d at 204. Those agreements demonstrate PPC's intent to maintain sole authorship of *Maverick*, and not to share it with *any* contributor. As the Ninth Circuit aptly put it: "It would be illogical to conclude that [a studio], while not wanting to permit [a director] to own the copyright, intended to share ownership with individuals…who worked under [the director's] control." *Aalmuhammed*, 202 F.3d at 1235.

Finally, Gray tries to prop up his claims by asserting that "courts routinely find joint authorship" amid contributions lesser than Gray's. Opp. 15. But again that is not the test: Amid "the contribution even of significant language to a work,…a specific finding of mutual intent remains necessary." *Thomson*, 147 F.3d at 202. Here, there can be none.

**3. Gray's Conclusory Agency Pleading Does Not Aid His Deficient Claims.**

Gray's conclusory pleading of an agency relationship between Singer and Kosinski, on the one hand, and PPC, on the other, cannot revive his joint authorship claims. Even if the alleged

5

conduct by Singer and Kosinski were imputed to PPC, the analysis would be fundamentally unchanged. Gray still lacked decisionmaking authority over the Screenplay and *Maverick*; he still lacked billing consistent with authorship; and he still had no relevant third-party contracts, juxtaposed with PPC's work-made-for-hire contracts with all known contributors. While Gray alleges that Kosinski "specifically requested Gray's involvement" in *Maverick*, that Singer "approached Gray to contribute his talents as a writer to the Screenplay," that they participated in story meetings together, and that they praised Gray for his contributions, this combination of allegations does not give rise to joint authorship under the settled test for mutual intent—all the more so since Gray concededly did not work on the *final* Screenplay or the actual production of *Maverick*. Compl. ¶¶ 22, 24, 26, 31. Indeed, in much the same way, playwright Jonathan Larson hired dramaturg Lynn Thomson to help him develop *Rent*, and they "worked extremely intensively together on the show"—but nonetheless lacked the mutual intent required for joint authorship. *Thomson*, 147 F.3d at 197, 201-05.

Further still, Gray's agency pleading is itself deficient. As work-made-for-hire contributors, Singer and Kosinski did not and could not have had actual authority to enlist Gray as a co-author with PPC (and Gray does not even allege as much). Indeed, Singer warranted in his contract with PPC that his draft would be "solely written by [Singer]." Lens Decl., Ex. F at 35. For *apparent* authority, Gray would need to point to conduct *by PPC*—not the purported agents—indicating that Singer or Kosinski had authority to enlist him as a joint author. Mot. 13-14. He alleges none. Any belief by Gray in such apparent authority would be unreasonable anyway (not least, given the work-made-for-hire agreements), independently dooming that theory. *Id.*

**B.    The Infringement Claim Fails For Lack Of Independent Copyright Protection.**

The "Gray Scenes" are not standalone works of authorship, but rather inseparable *parts* of works of authorship, and they are thus not invested with standalone copyrights. That means Gray

6

had no copyright in the "Gray Scenes" for PPC to infringe.

Under *Casa Duse*, "inseparable contributions integrated into a single work" are not subject to independent copyright protection. 791 F.3d at 257-59. Copyright protection subsists in the overarching work of authorship—just not independently in its constituent contributions. *Id*. Gray nonetheless contends this inseparability argument "has no support in the case law" and "is, *at best*, an open question." Opp. 17. But while Gray is correct that *Thomson* (in 1998) left open the question of what interest, if any, someone in Gray's position might hold, 147 F.3d at 206, that question is no longer "open" after *Casa Duse* was decided in 2015.

Gray does not meaningfully question that the so-called "Gray Scenes" were, in fact, inseparable contributions integrated into a unitary work. Gray claims there may be some nebulous embedded fact question,[3] but he already admitted that he prepared the Gray Scenes with the intent that they "be merged into inseparable or interdependent parts of a unitary whole," i.e., the Screenplay and ultimately *Maverick*. Compl. ¶¶ 44-45. A review of the Gray Scenes themselves confirms the same. Mot. 18-19.

Rather, Gray tries to distinguish *Casa Duse* on its facts, noting that it concerned a film's director rather than screenwriter. Opp. 18-19. But that had nothing to do with the analysis. The court did not, as Gray suggests, reject the director's copyright claim on the basis that the "creativity inherent in directorial choices" would not ordinarily be copyrightable. Opp. 18. To the contrary, it presupposed originality and fixation, but found those prerequisites to copyrightability "not alone sufficient." 791 F.3d at 258. The court acknowledged a director even could be the *sole* author of

---

[3] Gray's reliance on *Maurizio* gets him nowhere. Opp. 18. There, the fact question referenced by the court was whether the language as issue was "independently created" by the plaintiff so as to satisfy the originality requirement for copyright. 84 F. Supp. 2d at 466. *Maurizio* also preceded *Casa Duse* by 15 years and did not grapple with inseparability.

7

a film, but had no copyright in his discrete contributions to it. *Id.*

Gray also misapprehends *Casa Duse* by arguing it *supports* his position that, according to legislative history, "a motion picture would normally be a joint rather than a collective work with respect to those authors who actually work on the film." Opp. 18-19; 791 F.3d at 257. (Gray selectively omits the "rather than a collective" language.) The court was not heralding that Congress intended writers like Gray "to enjoy all the benefits of copyright protection," Opp. 19; it was explaining that a film was a paradigmatic joint work, with a single copyright as a single work of authorship. 791 F.3d at 257. It thus *undermines* Gray's position.

Finally, Gray suggests this application of *Casa Duse* would divest all screenplays of copyright protection if later made into a film. Opp. 17-18. In so arguing, Gray shape-shifts his infringement claim, which depends not on a copyright in the Screenplay or any draft thereof, but on individual purported copyrights in each constituent scene he allegedly prepared as part of the Singer Draft. *Maverick*'s Screenplay has hundreds of constituent scenes (it concludes with Scene 329, Lens Decl., Ex. E at 170), so it is easy to see how according individualized copyright protection to each scene would "mak[e] Swiss cheese of copyrights," 791 F.3d at 258. In any event, a draft of a screenplay for a future film would likely be considered an early "version" of the film and thus a separate work, 17 U.S.C. § 101. The same does not hold for each scene (or string of dialogue or paragraph of text), which remains an inseparable, integrated part of that version.

Applying *Casa Duse* here also does not mean the Gray Scenes "exist in copyright limbo." Opp. 1. They are encompassed within the broader copyright in the Screenplay and *Maverick*—or at least, the version thereof embodied in the Singer Draft, which would "constitute[] the work as of that time," 17 U.S.C. § 101. However, Gray advances no infringement claim as to that broader copyright, and rightly so. He is not a joint author for the reasons discussed above, and even if he

8

were, "one joint author may not sue another joint author for copyright infringement." *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 314 (S.D.N.Y. 2000). And Gray is certainly not the *dominant* author of the broader works, which is the test applied where "none of the multiple-author scenarios specifically identified by the Copyright Act applies, but multiple individuals lay claim to the copyright in a single work." *Casa Duse*, 791 F.3d at 260. (That test mirrors the one for joint authorship. *Id.* at 260-61.) Inherent in the dominant-author test is the notion that a *non*-dominant author will not hold a copyright interest in the work, even if he made contributions that might otherwise be copyrightable. *Id.*

### C. The Infringement Claim Fails Because Gray At Minimum Implied A License.

If Gray somehow did hold a copyright in the Gray Scenes, he implied a license for PPC to use them in the Screenplay and *Maverick*.[4] Gray tries to rebut an implied license by asserting there was no "meeting of the minds between the parties *to permit the particular usage at issue*." Opp. 20. But Gray alleges he was specifically tasked with contributing to the Screenplay for it to be used in *Maverick*, and that he intended his contributions to be merged into the Screenplay and *Maverick* as a unitary whole. Compl. ¶¶ 4, 22, 45. That is also the only plausible understanding of Gray's work; he was not writing scenes in a vacuum. *Fontana v. Harra*, 2013 WL 990014, at *8 (C.D. Cal. Mar. 12, 2013) ("[P]laintiff's intent is apparent from the fact that he was hired to write a screenplay"). Gray tries to avoid the consequences of his admissions by noting he can plead *claims* in the alternative, Opp. 20 n.7, but that does not mean he can plead inconsistent *facts* about his own intentions.[5] *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 615 n.10

---

[4] As Gray concedes, a complaint can be dismissed based on an affirmative defense where it "appear[s] on the face of the complaint." Opp. 19.

[5] To any extent inconsistent factual allegations may be permitted, it is "only when [the pleader is] legitimately in doubt about the facts in question"—certainly not his own mindset and intentions. *2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009).

9

(S.D.N.Y. 2003) (although "a complaint *may* plead in the alternative," it "may not allege inconsistent *facts*…because facts are binding judicial admissions"). Thus, the scope of the implied license clearly encompassed usage of the Gray Scenes in the Screenplay and *Maverick*.

Gray alternatively insinuates any such license was revoked for lack of consideration with the filing of his Complaint. Opp. 23. But while Gray alleges he "never received any compensation from PPC," Compl. ¶ 28, he specifically *does not* allege he never received compensation *from Singer*. This is no accident—Gray was compensated by Singer for his contributions, and neither Gray nor his attorney could allege otherwise without violating Federal Rule of Civil Procedure 11(b). Thus, Gray's implied license to Singer (of which PPC was a third-party beneficiary) was not revocable. The Court should (i) require Gray to affirmatively plead (subject to Rule 11) that he received no compensation from Singer, before considering Gray's unpled "revocation" theory; and (ii) at minimum, dismiss the infringement claim as to all alleged infringements preceding this action's April 27, 2025 filing.

\*   \*   \*

These defects are *legal* holes, not pleading shortcomings, so dismissal should be with prejudice. Gray has not even attempted to show how he could amend to overcome these issues. To the contrary, he asks only for leave to amend to plead an unjust enrichment claim if his current claims fail. Opp. 17 n.6. No such leave should be granted—first and foremost, because this Court would lack jurisdiction over an amended complaint presenting only a state-law claim between non-diverse parties. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 36-37 (2025). On substance, too, any such claim would fail because Gray was compensated by Singer for the services he rendered and PPC, in turn, compensated Singer for his work product.

### III.  CONCLUSION

The Complaint should be dismissed with prejudice.

10

Dated: June 30, 2025				By: */s/ Molly M. Lens*

                        O'MELVENY & MYERS LLP
                        Molly M. Lens
                        mlens@omm.com
                        Matthew Kaiser (admitted *pro hac vice*)
                        mkaiser@omm.com
                        1999 Avenue of the Stars, 8th Fl
                        Los Angeles, California  90067
                        Telephone: (310) 553-6700
                        Facsimile: (310) 246-6779

                        Danielle Feuer
                        dfeuer@omm.com
                        1301 Avenue of the Americas, Ste 1700
                        New York, New York 10019
                        Telephone: (212) 326-2000
                        Facsimile: (212) 326-2061

                        *Attorneys for Defendants Paramount Global, Paramount Pictures Corporation, and Paramount Streaming Services, Inc.*

# CERTIFICATE OF WORD COUNT (L.R. 7.1(C))

Pursuant to Local Rule 7.1(c), I hereby certify that, excluding the caption, table of contents, table of authorities, signature block, and this certificate, the foregoing Memorandum of Law contains 3,500 words, counted using the Microsoft Word program used to prepare it. It therefore complies with the word-count limitation of Local Rule 7.1(c). The foregoing Memorandum of Law is also 10 double-spaced pages, and it therefore complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: June 30, 2025

*/s/ Molly M. Lens*

Molly M. Lens