UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ SHAUN GRAY,                              │
│                                          │
│              Plaintiff,                  │
│                                          │
│                                          │
│       -v-                                │
│                                          │
│ PARAMOUNT GLOBAL ET AL.,                 │
│                                          │
│              Defendants.                 │
│                                          │
└─────────────────────────────────────────┘
```

25-cv-3484 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

On September 2, 2025, the Court issued a "bottom-line" Order (the "September 2 Order") granting the defendants' motion to compel production of communications between Shaun Gray and non-party the Writers' Guild of America ("WGA"). See ECF No. 54. That Order explained that the Court had concluded Gray had no basis to withhold from defendants his copies of the communications sought by defendants. See id. This Opinion and Order sets forth the reasons for the September 2 Order and further concludes that it need not reach the parallel motion to require the WGA to provide its copies of the same communications.

I.    Background

This case arises out of the production and release of the film Top Gun: Maverick. The full background is detailed in the Court's previous Opinion & Order, familiarity with which is here presumed. See ECF No. 40. As relevant here, Gray alleges that in

or around June 2017, his cousin Eric Warren Singer was hired by various Paramount entities to write the film's screenplay. See ECF No. 1 at ¶ 2. Gray further alleges that Singer then approached Gray to co-write the screenplay. Id. Over the next several months, Gray's complaint states that he participated in story meetings and the drafting of key scenes in the movie. Id. at ¶ 4.

After Top Gun: Maverick was released, Gray filed suit against various Paramount entities, alleging, among other claims, copyright infringement. On July 30, 2025, the Court granted in part and denied in part defendants' motion to dismiss. See ECF No. 29.

Since then, the parties have been engaged in the instant discovery dispute. Relevant to that dispute are communications that Gray and his personal attorney, Saver, had with WGA attorneys regarding Gray's rights under the WGA's minimum bargaining agreement ("MBA") and the WGA's investigation into potential violations of that agreement. After conducting the investigation, the WGA issued a determination letter to Gray, concluding that there was no viable claim the WGA could bring under the MBA.

In May 2025, defendants served their first Set of Requests for Production on Gray. Gray agreed to produce documents subject to objections. Paramount also served a subpoena on the WGA seeking "[a]ll documents Concerning any claim or request by Shaun Gray for writing credit, including Concerning Top Gun: Maverick . . .,

Including Communications with Gray." ECF No. 35 ("Lens Declaration"), Exh. H. During a meet-and-confer on July 30, 2025 Gray's counsel indicated that Gray and Saver's communications with the WGA were privileged. On August 1, 2025, the WGA produced a privilege log identifying emails between the WGA attorneys and Gray and Saver as privileged. Gray and Saver also filed privilege logs, flagging those same communications as privileged. Defendants then filed a motion to compel production. On August 19, 2025, the Court heard arguments on this motion.

## II.  Legal Standard

A party is entitled to discovery on "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The movant has the initial burden of demonstrating that the information sought is relevant to the subject matter of the pending action. In re BM Brazil 1 Fundo de Investimento em Particpacoes Multistrategia, 347 F.R.D. 1, 9 (S.D.N.Y. 2024). But once that initial burden is met, the responding party must justify curtailing discovery. Id. Here, the parties agree that the requested communications are relevant to the lawsuit, so the burden shifts to the responding party to justify any refusal to produce.

## III.  Discussion

The WGA and Gray press three arguments as to why the communications are not discoverable: (1) attorney-client privilege, (2) common-interest privilege, and (3) collective-

bargaining privilege. We reject each in turn as to Gray and take
no position as to the WGA's assertions of privilege.

A. Attorney-Client Privilege

When a party asserts the attorney-client privilege, courts
construe the privilege narrowly because it renders relevant
information undiscoverable. Courts apply the privilege only when
necessary "to encourage attorneys and their clients to communicate
fully and frankly and thereby to promote broader public interests
in the observance of law and administration of justice." In re
Cnty. of Erie, 473 F.3d 413, 418 (2d Cir. 2007) (quotations
omitted).

The WGA asserts the attorney-client privilege over the
communications between itself and Gray. As noted, the WGA and Gray
do not dispute that the communications at issue are relevant. But
the WGA and Gray nonetheless argue that the Upjohn doctrine, which
protects communications between corporate counsel and rank-and-
file employees when those communications are made to secure legal
advice for the corporation, applies in this context. Upjohn Co. v.
United States, 449 U.S. 383 (1981). The WGA explains that when
Gray submitted his complaint to the WGA, the WGA's task was to
determine whether to initiate on behalf of the WGA a formal claim
under the grievance and arbitration provisions of the agreement
between the WGA and Paramount. To do so, the WGA needed to gather
more information from Gray about his claim before deciding whether

to proceed with a claim against Paramount, which the WGA argues indicates the need for attorney-client privilege.

Paramount disagrees. It asserts that Upjohn's concerns are inapplicable here, because Gray is not an employee or agent of the WGA, and his acts do not bind the WGA. Paramount further argues that neither this case, nor the underlying investigation by the WGA, implicate any concern that Gray might embroil the WGA in serious legal difficulties. Finally, Paramount notes that even if the privilege applied, it would belong to the WGA, not Gray, and that the WGA confirmed in a July 22 email that it would not object if Paramount sought production of communications from Gray or Singer. So the Court could compel production from Gray, who would have no independent basis to withhold the subject documents.

The Court agrees that even if the Upjohn doctrine arguably protects communications between unions or labor organizations and its members in situations such as the one here presented, such privilege, if any, would belong to the organization, rather than the member. The WGA stressed this very point at oral argument, and Gray does not make any argument to the contrary. See Transcript from Oral Argument ("Transcript") at 8-9. So such attorney-client privilege as arguably here exists belongs to the WGA and does not protect Gray's communications with the WGA from discovery given that the WGA agreed to not object to production of documents from

Gray. Lens Declaration, Ex. Q ("[T]he Guild will not object if [defendants] seek production of the communications from [Gray].").

      B. Common-Interest Privilege

      Gray now argues that the so-called "common-interest privilege" provides independent protection for the communications. See ECF No. 44 at 10. The common-interest privilege is "an extension of the attorney-client privilege" that applies where multiple parties "share a common interest about a legal matter." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). But there are at least two independent reasons to reject this argument.

      First, the argument was forfeited. In the initial discovery dispute, neither Gray nor the WGA asserted the "common-interest privilege" as a reason to protect their communications. See ECF Nos. 45-1, 35-5. A belated assertion of privilege amounts to a "moving target" that courts regularly reject. S.E.C. v. Yorkville Advisors, LLC, 300 F.R.D. 152, 166 (S.D.N.Y. 2014); see In re DiDi Glob. Inc. Sec. Litig., 2025 WL 1735412, at *7 & n.59 (S.D.N.Y. June 23, 2025) (unpublished) (gathering cases).

      Second, even assuming arguendo that the privilege has not been forfeited, it is still inapplicable here. The common-interest privilege applies when multiple parties "share a common interest about a legal matter." Schwimmer, 892 F.2d at 243. To assert the common-interest privilege, (1) the party asserting the privilege must share a common legal interest with the party with whom the

communications were shared, (2) the communications must have been made in furtherance of that common legal interest, and (3) the parties should not have subsequently taken positions adverse to each other with respect to the shared legal interest. Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015).

Gray's argument fails at the first element. A "common legal interest" requires the parties to "share an identical, not similar, legal interest." SS&C Tech. Holdings, Inc. v. AIG Specialty Ins. Co., 2019 WL 6701857, at *1 (S.D.N.Y. Dec. 9, 2019) (quotations omitted). But at the time that Gray and Saver reached out to the WGA, they were interested in potentially pursuing their own claims under the MBA. Gray Decl. ¶ 4; Saver Decl. ¶ 7. The WGA's interest, on the other hand, was investigating whether Paramount had violated the MBA. Transcript at 19 ("Mr. Gray had come to us about possibly pursuing a grievance and an arbitration claim on his behalf . . . [the WGA] conducted an investigation to see if there was a viable claim."). Though all the parties' interests may have been similar, they were not identical. That distinction is belied by the fact that the WGA ultimately decided to not pursue a claim on behalf of Gray.

Additionally, Gray and Saver were interested in potentially pursuing claims against Paramount and "others." Gray Decl. ¶ 4; Saver Decl. ¶ 7 (Saver expressing an "interest in evaluating and potentially pursuing claims against, inter alia, [Paramount]."

(emphasis added)). But to the extent the "other" individuals included Gray's cousin, Singer, Transcript at 13–14, the WGA owed duties to both Gray and Singer. So again, though all the parties' interests may have mostly aligned, they would not have been identical. So Gray cannot rely on the common-interest privilege.

C. Collective-Bargaining Privilege

Finally, Gray asserts what he calls the "collective-bargaining privilege," which he argues protects communications between individuals and their union representatives during disciplinary proceedings. ECF No. 44 at 9.

The Court rejects this assertion for several reasons. First, like the common-interest privilege, this privilege was not identified at any point during the discovery dispute, and was therefore waived. Second, in any case, no "Second Circuit case law . . . recognizes a 'union relations privilege.'" Hernandez v. Off. of the Comm'r of Baseball, 331 F.R.D. 474, 477–78 (S.D.N.Y. 2019). And many courts, in fact, have flatly rejected the existence of such a privilege. See, e.g., ECF No. 50 at 14 n.10 (collecting cases). This caution is well-founded, because privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." United States v. Nixon, 418 U.S. 683, 710 (1974). Accordingly, the Court does not take the step at this juncture of recognizing the collective-bargaining privilege, or its application to these particular facts.

IV.  Conclusion

For the foregoing reasons, the Court reconfirms its September 2 Order granting the defendants' motion to compel production. Specifically, the Court finds that Gray has no privilege that he can assert with respect to the communications between himself, Saver, and the WGA. It follows that Gray must produce the communications in question. And since the parties agree that these are the same as the communications sought from the WGA, the subpoena to the WGA is hereby quashed on grounds of mootness.

SO ORDERED.

New York, NY
September 15, 2025

_____
JED S. RAKOFF, U.S.D.J.

9