UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| SHAUN GRAY,<br><br>Plaintiff,<br><br>-v-<br><br>PARAMOUNT GLOBAL ET AL.,<br><br>Defendants. | 25-cv-3484 (JSR)<br><br>MEMORANDUM |
|---|---|

JED S. RAKOFF, U.S.D.J.

On September 3, 2025, defendants, including Paramount Global, Paramount Picture Corporation, and Paramount Streaming Services (collectively, "PPC"), answered plaintiff Shaun Gray's complaint. See ECF No. 56. In their answer, PPC asserted counterclaims for fraud and copyright infringement against Gray. Gray subsequently moved to dismiss the counterclaims, see ECF No. 57, and the Court heard oral argument on October 14, 2025. Upon full consideration of the parties' briefing and arguments, the Court issued a "bottom-line" Order on October 20, 2025, denying the motion to dismiss. See ECF No. 68. This Memorandum sets forth the reasons for that Order.

I. Background

The Court presumes the parties' familiarity with the parties' allegations. For context, however, this case arises out of a screenwriting dispute concerning the film Top Gun: Maverick, which depicts a group of fighter pilots at the Top Gun Navy Fighter

Weapons School undertaking a high-risk mission. Complaint ¶ 2. Plaintiff Gray alleges that around June 2017, his cousin Eric Warren Singer was hired by PPC to help write the film's screenplay and that Singer approached Gray to co-write it. Id. at ¶ 4, 21. Gray claims that he wrote "key scenes for the screenplay that became the Film's central edge-of-your seat dramatic action sequences that made it a smash hit" ("Gray Scenes"). Id. at ¶ 4.

In April 2025, Gray filed suit against PPC, seeking a declaration of joint authorship and joint ownership of the screenplay and film's copyrights. Id. ¶ 8. He alternatively alleged that PPC was liable to him for copyright infringement. Id. PPC moved to dismiss both claims. The Court granted in part and denied the motion to dismiss, preserving Gray's copyright infringement claim. See ECF No. 29. In early September 2025, PPC filed an amended answer that, as noted, brought counterclaims against Gray for copyright infringement and fraud. Gray moved to dismiss shortly thereafter, see ECF No. 57.

II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), each counterclaim brought in an answer, just like a claim in a complaint, must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).[1] In adjudicating a motion to dismiss, the Court construes the counterclaim "liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).

III. Discussion

Gray advances several grounds for dismissing PPC's counterclaims. He first contends that PPC lacks Article III standing. He next asserts that both counterclaims are time-barred and precluded by a New York state privilege. Finally, Gray maintains that PPC fails to state a claim for fraud. The Court addresses and rejects each argument in turn.

A. Article III Standing

To establish Article III standing, a plaintiff must demonstrate that (1) it suffered an injury-in-fact that is concrete, particularized, and actual or imminent, (2) the injury was caused by the defendant, and (3) the injury would likely be redressed by the requested judicial relief. See Saba Cap. CEF Opportuns. 1, Ltd. v. Nuveen Floating Rate Income Fund, 88 F.4th 103, 110 (2d Cir. 2023).

[1] Unless otherwise indicated, all case quotations omit internal alterations, brackets, citations, ellipses, quotations, and quotation marks.

Gray argues that PPC has alleged no injury-in-fact sufficient to establish Article III standing. As to the copyright claim, he suggests that any harm arising out of that claim is based entirely on the any devaluation Top Gun: Maverick suffered because of this lawsuit. See ECF No. 57-1 at 15. Thus, Gray argues, because harm arising out of protected litigation activity cannot establish standing, and any remaining statutory damages are not an independent injury-in-fact, the copyright claim must be dismissed.

But this mischaracterizes PPC's copyright infringement claim. PPC's injury from the copyright infringement claim springs from the allegation that Gray exploited PPC's copyrighted material in his preparation of the Gray Scenes. See ECF No. 56 ¶ 66. That exploitation, in turn, invaded PPC's property rights, including their right to prepare derivative works. Gray's alleged infringement thus limited PPC's ability to exploit their own exclusive copyright.

In other words, a "stick" from PPC's "bundle of property rights" has been removed. The Intercept Media, Inc v. OpenAI, Inc., 767 F. Supp. 3d 18, 27 (S.D.N.Y. 2025). This "downstream infringement" is the kind of concrete injury-in-fact that establishes Article III standing because film creators have a "property right in [their] original work of authorship" and "the harm faced by [PPC] . . . implicates the same incentives to create that justify traditional copyright." Id. at 26-28. For instance,

a party's exploitation of an existing copyright "makes it more likely that [PPC] will no longer find it worthwhile to create new [movies]." Id. at 28.

Gray's Article III argument as to PPC's fraud claim similarly mischaracterizes PPC's argument. He construes PPC's fraud claim as relying on harm arising out of this litigation. But PPC's fraud claim is premised on the assumption that Gray worked on scenes that he allegedly knew he did not have permission to work on, and that he hid this fact from PPC to their detriment. In turn, PPC alleges that Gray's actions created a "cloud over PPC's title to Maverick." ECF No. 56 ¶ 78. And courts regularly hold that a cloud on one's title constitutes an actionable injury-in-fact. See, e.g., Baptiste-Elmine v. Richland & Falkowski, PLLC, 2025 WL 974346, at *6 n.* (E.D.N.Y. Apr. 1, 2025).

Accordingly, the Court denies Gray's motion to dismiss PPC's claims based on lack of Article III standing.

B. Statute of Limitations

Gray next argues that both of PPC's counterclaims are time-barred. The Court also rejects this argument.

Beginning with the fraud claim, New York's statute of limitations for fraud is either six years from the date the cause of action accrued or two years from the time the counterclaim plaintiff discovered the fraud or could have with reasonable diligence found it. N.Y. C.P.L.R. § 213(8). Gray filed this lawsuit

on April 27, 2025, and PPC answered with their counterclaims on August 13, 2025.

The dispute centers around whether the date of accrual begins from PPC's detrimental reliance or from when PPC's harm manifested. Gray argues that New York law fixes accrual from the date reliance upon the fraud first causes detriment. Gray suggests that here, that date is 2017, more than six years ago. But PPC resists this conclusion, contending that PPC's fraud claim did not begin accruing until "all the elements" of the claim could be alleged. See VR Glob. Partners, L.P. v. Petroleos de Venezeula, 2004 WL 1514982, at *5 (S.D.N.Y. Apr. 8, 2024). PPC suggests that this means that the clock did not begin ticking until 2022, when the Top Gun: Maverick film was released, and PPC's damages actualized.

The Court is persuaded by PPC's argument. PPC's fraud claim did not accrue until "all the elements of [the] tort claim [could] be alleged." VR Glob. Partners, L.P., 2024 WL 1514982, at *5. Under New York law, the elements of common law fraud are (1) a material, false representation, (2) an intent to defraud thereby, (3) reasonable reliance on the representation, and (4) damage to the plaintiff caused thereby. See Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999). For the fraud claim, the "damage" PPC alleges is the cloud to their title. And that cloud would not have actualized until 2022, when the film was released. See Stewart v. Stewart, 2018 WL 11365079, at *19 (W.D.N.Y. Nov. 29, 2018) (fraud

claim accrued from the earliest date that the plaintiff could "truthfully allege injury arising from her [fraud] claims"). To be sure, PPC detrimentally relied on Gray's alleged fraud before the film's release, but those were instances of reasonable reliance on the alleged misrepresentations, not harm. Accordingly, the fraud claim is not barred by the statute of limitations.

As to the copyright claim, dismissal is not warranted at this stage because some doubt exists as to the date of accrual. The Copyright Act has a three-year statute of limitations, 17 U.S.C. § 507(b), but "[d]ismissal of a copyright infringement claim on statute of limitations grounds at the pleadings stage is only appropriate when it is clear from the face of the complaint and judicially noticed matters that the claim [is] barred as a matter of law." New York Times Co. v. Microsoft Corp., 777 F. Supp. 3d 283, 3003 (S.D.N.Y. 2025). Indeed, if there is even "some doubt" as to whether dismissal is warranted, a court should not grant a 12(b)(6) motion on statute of limitations grounds. PK Music Performance, Inc. v. Timberlake, 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018).

Here, there is at least "some doubt" as to when the copyright infringement claim began accruing. PPC alleges it did not know about Gray's writing role until January 2023. That would place this claim squarely within the 3-year statute of limitations period. Gray, on the other hand, argues that PPC's pleadings

contradict that allegation, because PPC claims that it had an "implied license" over Gray's writing from 2017, and PPC could not both have an implied license from 2017 (which Gray contends would mean that PPC had knowledge of the writing from that point) and only learn of Gray's writing role starting in January 2023. ECF No. 63 at 2. But there are reasons why PPC's pleadings are not contradictory, and, at minimum, these are allegations that could be plead in the alternative. Accordingly, the Court rejects the motion to dismiss the copyright claim on statute of limitations grounds.

C. New York's Litigation Privilege

Next, Gray argues that New York's litigation privilege bars PPC's copyright infringement and fraud claims. His theory is premised on assuming that PPC's claims rely on harm arising from this litigation. But even assuming arguendo that New York's litigation privilege applies in the context of non-defamation claims, PPC's claims, as noted above, do not rely on harm tied to this litigation. Furthermore, at least as to the privilege's assertion against the copyright infringement claim, state-law privileges generally do not offer a defense to federal claims.

New York law affords absolute immunity for oral and written statements made in connection with a proceeding before a court when such words and writings are material and pertinent to the questions involved. See Front, Inc. v. Khalil, 24 N.Y.3d 713, 718

(2015). New York law also affords qualified privilege for pre-litigation statements. Id. at 719.

Gray contends that PPC's fraud claim rests on two categories of communications protected by the privilege doctrine. First, he asserts that PPC's own allegations show that PPC learned of his claimed authorship through the January 2023 statement he prepared and his counsel sent (the "Gray Narrative"). According to Gray, PPC's alleged harm stems from that statement -- which he characterizes as a communication made in anticipation of litigation -- because it purportedly cast a cloud over PPC's title to Top Gun: Maverick. See ECF No. 57-1 at 13. Second, Gray argues that PPC's fraud theory also rests on the allegation that this lawsuit itself created a "cloud" on PPC's title to the film. He maintains that this assertion is barred by New York's absolute privilege for statements made in the course of judicial proceedings. On both grounds, Gray argues that PPC's claim fails as a matter of law.

But Gray bears the burden of establishing that the privilege applies, see In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia, 347 F.R.D. 1, 9 (S.D.N.Y 2024), and the New York litigation privilege does not clearly apply to claims beyond the defamation context, see, e.g., Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010); Michelo v. Nat'l Colleg. Student Loan Trust 2007-2, 419 F. Supp. 3d 668, 693

(S.D.N.Y. 2019). Moreover, even if the privilege applied to non-defamation contexts, it would not apply here. PPC's claims arise from Gray's fraudulent concealment of his purported authorial role on the Top Gun: Maverick screenplay; neither of PPC's claims are premised, as Gray assumes, on the Gray Narrative in 2023 or the filing of this lawsuit in 2025. Further, as to the copyright infringement claim, state-law privileges are not a defense to federal claims like copyright infringement. See U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc., 2021 WL 1956369, at *4 (S.D.N.Y. May 17, 2021).

D. Failure to State a Fraud Claim

Finally, Gray asserts that PPC fails to state a fraud claim. As noted, the elements of common law fraud under New York law are (1) a material, false representation, (2) an intent to defraud thereby, and (3) reasonable reliance on the representation, (4) causing damage to the plaintiff. See Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999) Gray argues that PPC has failed to allege actionable concealment or a duty to disclose, justifiable reliance, and cognizable damages. The Court is unpersuaded.

First, a reasonable jury could conclude that Gray had a duty to disclose that he was writing scenes in Top Gun: Maverick. Under New York law, "concealment of facts supports a cause of action for fraud only if the non-disclosing party had a duty to disclose." Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d

1478, 1483 (2d Cir. 1995). "Such a duty ordinarily arises where the parties are in a fiduciary or other relationship signifying a heightened level of trust." Id. Gray argues that he had no duty to disclose to PPC that he had written the Gray Scenes because he had no fiduciary relationship with PPC. But a duty to disclose may arise "in the absence of a fiduciary relationship" if "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Remington, 68 F.3d at 1484.

Gray argues that this exception is inapplicable. He first contends that, for the "superior knowledge" prong to apply, the parties must be in a "transaction." See Oden v. Bos. Sci. Corp., 330 F. Supp. 3d 877, 898 (E.D.N.Y. 2018). And Gray argues that there was no "fiduciary, confidential, or even transactional relationship between itself and Gray." ECF No. 57-1 at 20. Additionally, Gray argues that even if there was a relationship, Gray was not in a superior position of knowledge because -- Gray claims -- PPC's agents knew about Gray's role in writing the scenes.

The Court disagrees. PPC alleges that Gray "intentionally concealed from PPC that he was purportedly writing scenes and making other authorial contributions to Singer's draft of the Maverick screenplay," and "[t]hat fact was within Gray's exclusive or superior knowledge, and PPC could not have reasonably discovered

it amid Gray's deception." See ECF No. 56 ¶¶ 72-73. Further, PPC alleges that "PPC was not aware of Gray's purported writing role," and that "Gray intended to deceive PPC by concealing this fact." Id. ¶¶ 74-75. Together, these allegations are sufficient to establish that Gray had a duty to disclose on the basis of his superior knowledge.

Gray insists that the duty to disclose needed to arise in the context of a relationship between himself and PPC. Not so. The duty to disclose "is not limited to the parties in privity of contract" where "nondisclosure would lead the person to whom the disclosure was or should have been made to forego action that might otherwise have been taken for the protection of that person." Strasser v. Prudential Sec. Inc., 218 A.D. 2d 526, 527 (N.Y. App. Div. 1st Dep't, 1995). Here, PPC argues that if they had known Gray was writing scenes, they would have, among other things, required Gray to sign a for-contract agreement. ECF No. 56 ¶ 31.

Gray further asserts that PPC's agents knew about Gray's role in writing the scenes. But PPC raises arguments to the contrary, asserting that the so-called agents -- Singer and Kosinski -- were not genuinely PPC's agents. See ECF No. 60 at 8-9. And the counterclaims themselves disclaim knowledge. See ECF No. 56 ¶ 74. At this stage, then, where the Court must accept the non-movant's allegations as true, Gray had a duty to disclose his writing role to PPC.

Further, the allegations are sufficient to establish that PPC justifiably relied on Gray's omission. Gray argues that the fraud counterclaim, in violation of Federal Rule of Civil Procedure 9(b), fails to allege particular facts that show that PPC reasonably relied on Gray's silence. Under that Rule, a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). Here, that means PPC must allege (1) what the omissions were; (2) who failed to disclose; (3) the context of the omissions and how they misled PPC; and (4) what Gray obtained through the fraud. See In re Platinum-Beechwood Litig., 2019 WL 1570808, at *8 (S.D.N.Y. Apr. 11, 2019). But PPC has done so. In its answer, PPC alleged with sufficient particularity that (1) Gray intentionally concealed from PPC that he was writing scenes; (2) Gray was responsible for disclosing that information; (3) Gray's omissions misled PPC; and (4) these omissions benefited Gray and clouded PPC's title to Top Gun: Maverick. ECF No. 56 ¶¶ 3, 22, 29, 31-42, 48, 72, 74, 76, 77, 78.

Finally, PPC has alleged legally cognizable damages. Gray asserts that a fraud claim must allege "out-of-pocket" damages proximately caused by the alleged fraud, see Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996), and that PPC has failed to do so. He explains that, for example, PPC did not allege that it overpaid Singer, incurred incremental production costs, or

incurred any other expenses because of Gray's alleged concealment. Gray contends that PPC's asserted damage is that it "invested" in Top Gun: Maverick, and that PPC would have made those investments anyway.

The out-of-pocket rule computes loss by "ascertaining the difference between the consideration paid for the property and its actual value as affected by the consequences of the fraud." Barrie House Coffee Co. v. Teampac, LLC, 2016 WL 3645199, at *11 (S.D.N.Y. June 30, 2016). A plaintiff may recover damages based on damage attributable to diminution in a property's value that is tied to the defendant's fraud. See Woodberry v. Graham, 2017 WL 151617, at *7 (S.D.N.Y. Jan. 13, 2017). Here, the relevant diminution in value is that PPC's title to Top Gun: Maverick was allegedly devalued by Gray's fraud. ECF No. 56 ¶ 78. Because the Copyright Act creates a bundle of exclusive rights to the owner of the copyright, see The Intercept Media, Inc., 767 F. Supp. 3d at 27, these property rights were plausibly diminished by Gray's fraud.

Accordingly, all the elements of a fraud claim have been alleged, and dismissal is unwarranted.

## IV. Conclusion

For the foregoing reasons, Gray's motion to dismiss PPC's counterclaims was denied.

New York, NY
October 27, 2025

JED S. RAKOFF, U.S.D.J.