UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUN GRAY, an individual,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>PARAMOUNT GLOBAL, a Delaware corporation; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; PARAMOUNT STREAMING SERVICES INC., a Delaware corporation; and DOES 1-10,<br><br>　　　　　　Defendants. | Civil Action No. 1:25-cv-3484 |
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation;<br><br>　　　　　　Counterclaim-Plaintiff,<br><br>　vs.<br><br>SHAUN GRAY, an individual,<br><br>　　　　　　Counterclaim-Defendant, | |

**DECLARATION OF MICHAEL GRIZZI IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

I, Michael Grizzi, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Executive Vice President of Worldwide Motion Picture Legal for Paramount Pictures Corporation ("Paramount"). I have been employed by Paramount for over two decades. I lead the legal team at Paramount that handles the acquisition of literary material, the engagement of writers and other above-the-line talent, and credit determinations for Paramount's feature productions. I submit this declaration in support of Defendants' Motion for Summary Judgment based on my personal knowledge of the facts set forth below. If called and sworn as a witness, I could and would testify competently thereto.

## The *Top Gun* Franchise

2. Paramount holds the copyright rights in the *Top Gun* film, which Paramount released in 1986. Paramount registered its copyright with the U.S. Copyright Office as the proprietor of a work made for hire. Attached hereto as **Exhibit A** is a true and correct copy of the copyright registration for *Top Gun*, produced by Paramount in this litigation with the Bates range PPC-GRAY-0086335–0086336.

3. On December 19, 2011, Paramount entered into a contract with screenwriter Peter Craig to prepare a screenplay draft for a *Top Gun* sequel on a work-made-for-hire basis. Attached hereto as **Exhibit B** is a true and correct redacted copy of Paramount's contract with Peter Craig, produced by Paramount without redaction in this litigation with the Bates range PPC-GRAY-0000012–0000086. It has been redacted for this public filing to protect sensitive commercial information that is not relevant to this case.

4. On September 12, 2014, Paramount entered into a contract with another screenwriter, Justin Marks, to further develop the sequel's screenplay on a work-made-for-hire basis. Attached hereto as **Exhibit C** is a true and correct redacted copy of Paramount's contract

with Justin Marks, produced by Paramount without redaction in this litigation with the Bates range PPC-GRAY-0000095–0000170. It has been redacted for this public filing to protect sensitive commercial information that is not relevant to this case.

5. On June 12, 2017, Paramount entered into a contract with director Joseph Kosinski for him to direct the *Top Gun* sequel on a work-made-for-hire basis. Attached hereto as **Exhibit D** is a true and correct redacted copy of Paramount's contract with Joseph Kosinski, produced by Paramount without redaction in this litigation with the Bates range PPC-GRAY-0000419–0000516. It has been redacted for this public filing to protect sensitive commercial information that is not relevant to this case

6. Paramount did not authorize Kosinski to hire any screenwriters for *Maverick*. Paramount did not authorize Kosinski to work with any screenwriters on *Maverick* who were not hired by Paramount. Paramount also did not authorize Kosinski to ask anyone other than a screenwriter hired by Paramount to write scenes for *Maverick* or to accept such work for inclusion in *Maverick*. And Paramount did not authorize Kosinski to license or assign any of Paramount's intellectual property. Paramount authorized Kosinski to use its intellectual property only to the extent Kosinski was preparing work for Paramount that Paramount would be entitled to use.

7. On June 6, 2017, Paramount entered into a contract with another screenwriter, Eric Singer, to prepare further drafts of the sequel's screenplay on a work-made-for-hire basis. Attached hereto as **Exhibit E** is a true and correct redacted copy of Paramount's contract with Eric Singer, produced by Paramount without redaction in this litigation with the Bates range PPC-GRAY-0000174–0000250. It has been redacted for this public filing to protect sensitive commercial information that is not relevant to this case.

8. Paramount did not authorize Singer to hire other screenwriters for *Maverick*. Paramount did not authorize Singer to ask anyone else to write scenes for *Maverick* or to incorporate anyone else's written work product into his screenplay draft, setting aside the source material that Singer was expressly permitted to work from. Paramount also did not authorize Singer to work with any screenwriters on *Maverick* who were not hired by Paramount. And Paramount did not authorize Singer to license or assign any of Paramount's intellectual property. Paramount authorized Singer to use its intellectual property only to the extent Singer was preparing work for Paramount that Paramount would be entitled to use.

9. On December 4, 2017, Paramount entered into a contract with another screenwriter, Ehren Kruger, to prepare additional rewrites of the *Top Gun* sequel's screenplay on a work-made-for-hire basis. Attached hereto as **Exhibit F** is a true and correct redacted copy of Paramount's contract with Ehren Kruger, produced by Paramount without redaction in this litigation with the Bates range PPC-GRAY-0000260–0000336. It has been redacted for this public filing to protect sensitive commercial information that is not relevant to this case.

10. On September 11, 2018, Paramount entered into a contract with a final screenwriter, Christopher McQuarrie, to prepare further drafts of the sequel's screenplay on a work-made-for-hire basis. Attached hereto as **Exhibit G** is a true and correct redacted copy of Paramount's contract with Christopher McQuarrie, produced by Paramount without redaction in this litigation with the Bates range PPC-GRAY-0000363–0000397. It has been redacted for this public filing to protect sensitive commercial information that is not relevant to this case.

11. In sum, Paramount engaged all of the known screenwriters for *Top Gun: Maverick*—Craig, Marks, Singer, Kruger, and McQuarrie—on a work-made-for-hire basis pursuant to express written contracts.

12. Paramount required that all screenwriters on *Maverick* be approved by Paramount and contract directly with Paramount.

13. On April 30, 2019, Paramount submitted a copyright preregistration for *Maverick* to the U.S. Copyright Office. Attached hereto as **Exhibit H** is a true and correct copy of *Maverick*'s copyright preregistration, produced by Paramount in this litigation with the Bates number PPC-GRAY-0000830.

14. On May 31, 2022, Paramount registered the copyright in *Maverick* with the U.S. Copyright Office. Attached hereto as **Exhibit I** is a true and correct copy of *Maverick*'s copyright registration, produced by Paramount in this litigation with the Bates range PPC-GRAY-0000826–0000827.

### Gray's 2023 Revelation of a Purported Writing Role on *Maverick*

15. Shaun Gray did not inform Paramount that he claimed to have made written contributions to Eric Singer's screenplay draft or to *Maverick* more generally until January 2023. Attached hereto as **Exhibit J** is a true and correct copy of Matt Saver's January 24, 2023 email to Courtney Armstrong of Paramount attaching Gray's January 23, 2023 statement, produced by Paramount in this litigation with the Bates number PPC-GRAY-0085466. Attached hereto as **Exhibit K** is a true and correct copy of the attachment—Gray's January 23, 2023 statement—produced by Paramount in this litigation with the Bates range PPC-GRAY-0085467–0085475.

### Paramount's Intellectual Property Practices

16. Paramount's intellectual property is one of its most valuable assets.

17. The value of Paramount's intellectual property depends on Paramount having a clear chain of title to all the material included in it.

18.     Therefore, Paramount will only use creative material that it believes it is authorized to use.

19.     Paramount would not knowingly produce a film based on a screenplay that it did not have the right to use.

20.     Paramount enters into written contracts with each screenwriter it engages.

21.     In nearly all cases, Paramount engages screenwriters on a work-made-for-hire basis through written agreements that deem the results and proceeds of the screenwriter's work to be authored and owned by Paramount (and contain belt-and-suspenders assignments of rights to any extent a work is *not* deemed work made for hire).

22.     In a minority of cases, Paramount may purchase a screenwriter's preexisting material, which it would effectuate through a written assignment of rights.

23.     If Paramount knew that Shaun Gray was planning to draft scenes for *Top Gun: Maverick* ("*Maverick*") and provide them to Eric Singer for inclusion in Singer's screenplay draft (the "Singer Draft"), Paramount would have either prevented Gray from doing so, including by directly admonishing Singer that Gray could not be involved or potentially contracting with a different screenwriter altogether; entered into a work-made-for-hire agreement with Gray; or required Gray to confirm that any contributions he made were owned by Singer.

24.     If Paramount knew that Gray contended he had in fact drafted scenes for *Maverick* and further contended that such scenes were included in the Singer Draft, Paramount would have either not provided the Singer Draft to its subsequent screenwriters; not permitted its subsequent screenwriters to use the Singer Draft as source material; excised the purported "Gray Scenes" from the Singer Draft and all subsequent screenplay drafts; excised the purported "Gray Scenes" from

*Maverick*; or at the very least, entered into a written assignment or license agreement with Gray that would have ensured Paramount's clear chain of title.

### The Credit Arbitration for *Maverick*

25. Paramount did not have the authority to determine the writing credits for *Maverick*. Instead, that authority contractually rested with the Writers Guild of America, which conducted a credit arbitration. Paramount adhered to the results of that credit arbitration in listing credits on the film.

26. A WGA credit arbitration for a film determines writing credits based on the respective screenwriters' contributions to the final screenplay for a film.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November **6**, 2025.

By: _____
Michael Grizzi