# EXHIBIT 56

UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF NEW YORK

SHAUN GRAY,                      )
                                 )
            Plaintiff,           )
                                 )
     VS.                         )   CASE NO.
                                 )   1:25-cv-3484-JSR
PARAMOUNT GLOBAL, et al.,        )
                                 )
            Defendant(s).        )
_____)

*** CONFIDENTIAL ***

DEPOSITION OF JOSEPH KOSINSKI, taken on behalf
of the Plaintiff, at 1999 Avenue of the Stars, 8th
Floor, Los Angeles, California, commencing at 10:18
A.M., Wednesday, August 13, 2025, before JOY CHIOU,
C.S.R. No. 13899, pursuant to NOTICE.

* * *

Joseph Kosinski  Confidential
August 13, 2025

1    APPEARANCES:

2    For Plaintiff:

3    TOBEROFF & ASSOCIATES, P.C.
     BY:  Marc Toberoff, Esq.
4    BY:  Jaymie Parkkinen, Esq.
     23823 Malibu Rd,
5    Suite 50-363
     Malibu, California 90265
6    (310) 246-3333
     Mtoberoff@toberoffandassociates.com
7    Jparkkinen@toberoffandassociates.com

8

     For Defendants:
9
     O'Melveny & Myers, LLP
10   BY:  Molly Lens, Esq.
     BY:  Nicki Guivatchian, Esq.
11   BY:  Warren Dern, Esq.
     1999 Avenue of the Stars,
12   Floor 8
     Los Angeles, California 90067
13   (310) 553-6700
     Mlens@omm.com

14

15

16

17

18

19

20

21

22

23

24

25

Joseph Kosinski  Confidential
August 13, 2025

```
 1                    I N D E X

 2   WITNESS              EXAMINATION              PAGE

 3   JOSEPH KOSINSKI      By Mr. Toberoff            5

 4                        By Ms. Lens               94

 5

 6

 7

 8

 9

10                  E X H I B I T S

11   DEFENDANT'S           DESCRIPTION             PAGE

12   EXHIBIT 1  Subpoena to Produce Documents,      14

13   Information, or Objects Or to Permit Inspection

14   Of Premises in a Civil Action, 57 pgs.

15   EXHIBIT 2  Memorandum of Agreement (Directing  46

16   Services - Loanout), 20 pgs.

17   EXHIBIT 3  E-mail from Sara Cummings, Dated     87

18   11/12/2017, Subject: My Chops, 8 pgs.

19   EXHIBIT 4  E-mail from Emily Cheung, Dated      90

20   5/12/2022, Re: "The Perfect Blockbuster Movie!",

21   1 pg.

22

23

24

25
```

Joseph Kosinski  Confidential
August 13, 2025

1              INSTRUCTION NOT TO ANSWER

2                  PAGE       LINE

3                  10         10

4                  11         11

5                   14         24

6                   26          7

7                   28          9

8                   83          2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Joseph Kosinski  Confidential
August 13, 2025

1    that we sort of have some understanding or definitions.

2    There was a film in 1986 called Top Gun; correct?

3         A    Yes.

4         Q    And later on in 2022, there is a film called

5    Top Gun Maverick?

6         A    Yes.

7         Q    At times, I'll refer to that film as Top Gun

8    Maverick.  Other times, I'll refer to it as Maverick.

9    It's understood that when I refer to Maverick, I'm

10   referring to the 2022 film, Top Gun Maverick?

11        A    Understood.

12        Q    I'll also sometimes be referring to parties

13   just by their last name instead of their first and last

14   name.

15        A    Okay.

16        Q    Do you have an understanding whether you're

17   represented by counsel today in this deposition?

18        A    Yes.

19        Q    Who represents you?

20        A    Molly.

21        Q    That's Molly Lens?

22        A    Yes.

23        Q    Of O'Melveny?

24        A    Yes.

25        Q    And do you have an engagement agreement with

Joseph Kosinski   Confidential
August 13, 2025

1    O'Melveny?

2        A    Yes.

3        Q    It's a written engagement agreement?

4        A    Yes.

5        Q    And when was that entered into?

6        A    I would estimate, six weeks ago.

7        Q    And are you responsible for compensating

8    O'Melveny for their legal services in connection with

9    this matter?

10            MS. LENS:  I'm going to instruct you not to

11   answer.

12            THE WITNESS:  So I'm not going to answer that.

13            MR. TOBEROFF:  What's the basis?

14            MS. LENS:  Attorney-client privilege.  You're

15   getting into the details of the engagement letter.

16   We've established that he has an engagement letter with

17   O'Melveny.  I don't think you're entitled past that.

18            MR. TOBEROFF:  I'm just asking whether he's

19   paying for your services.  That doesn't involve legal

20   advice.

21            MS. LENS:  The instruction stands.  We can

22   take it up off the record.  You don't need to get this

23   from this witness or any of that.

24   BY MR. TOBEROFF:

25       Q    Is it your understanding that Paramount is

Joseph Kosinski  Confidential
August 13, 2025

1    responsible for paying O'Melveny in connection with

2    representing you at this deposition?

3           MS. LENS:  You can answer that question, Marc,

4    if you agree that it's not a waiver of any privilege.

5    Do you agree?

6           MR. TOBEROFF:  I don't believe there is a

7    privilege to be waived, so I'll agree that it's not a

8    waiver of nonexisting privilege.

9           MS. LENS:  You know what?  Let's take this up

10   off the record.  You do not need the witness for this.

11   I'm going to instruct the witness not to answer.  I'm

12   happy to meet and confer with you after I've reviewed

13   the law into whether or not who is paying, whether

14   that's protected by privilege.  So let's move on.

15   BY MR. TOBEROFF:

16      Q    I'm going to ask the question again.  Is it

17   your understanding that Paramount -- let me put it this

18   way.

19           It's my assumption that Paramount is paying

20   O'Melveny for the representation of you today in this

21   deposition.  Would you agree with that, that that's

22   correct, that assumption?

23           MS. LENS:  He's not going to answer about with

24   respect to whether your assumptions, and it's the same

25   question, Marc, so the same instruction stands.  Let's

Joseph Kosinski  Confidential
August 13, 2025

1    move on.

2    BY MR. TOBEROFF:

3        Q    Okay.  Would you agree that -- is it your

4    understanding that Paramount is paying O'Melveny --

5            Is it your understanding that Paramount is

6    paying O'Melveny for representation today at this

7    deposition?

8            MS. LENS:  Same instruction.  Instruction not

9    to answer.  Let's move on, Counsel.

10           MR. TOBEROFF:  On the basis that that's

11   privilege?

12           MS. LENS:  Yes, and that I've offered to take

13   it up in a meet and confer with you off of the record,

14   and I explained to you that there is no reason to waste

15   this witness's time with this discussion.

16   BY MR. TOBEROFF:

17       Q    Did you receive a subpoena in this case?

18           MS. LENS:  Objection.  Vague.

19           THE WITNESS:  I actually don't know the answer

20   to that.

21   BY MR. TOBEROFF:

22       Q    Were you served with any legal papers in this

23   case?

24           MS. LENS:  Again, it's vague.  Him personally?

25   You know very well that you served the papers on us at

Joseph Kosinski   Confidential
August 13, 2025

1    so.

2    BY MR. TOBEROFF:

3        Q    How many films have you directed?

4        A    Six, I believe.

5        Q    I think I'm done with this exhibit for now.

6        A    Okay.

7        Q    What films are those?

8        A    Tron: Legacy, Oblivion, Only the Brave, Top

9    Gun Maverick, Spiderhead, and F1.

10       Q    Do you agree with the following definition of

11   a film director, "a person who is generally regarded as

12   the primary creative force behind a motion picture, and

13   who oversees its entire artistic production"?

14       A    Yes.

15       Q    Broadly speaking, would you say that as a

16   director of a film, you're in charge of all creative

17   aspects of a film's production?

18            MS. LENS:  Objection.  Overly broad.  It calls

19   for a legal conclusion.  You can answer.

20            THE WITNESS:  I would say with caveats that it

21   is a very broad definition, but generally, there are

22   aspects of the job, where you have to have the studio

23   agree to certain creative aspects.

24   BY MR. TOBEROFF:

25       Q    Right.  But subject to that, you're the man in

Joseph Kosinski  Confidential
August 13, 2025

1    charge?

2        A    Broadly speaking, yes.

3        Q    And that was your true -- that was true of

4    your role as director of Top Gun Maverick?

5        A    Yes.

6        Q    As part of your duty as director, you were

7    closely involved with the development of Maverick's

8    screen play?

9        A    Yes.

10       Q    And is it correct that, prior to your

11   employment of June 2017, Paramount had been developing

12   a sequel to Top Gun?

13       A    Yes.

14       Q    And that there was a prior script that had

15   already been written when you came on to serve as

16   director?

17       A    There were several drafts.

18       Q    Were there any in particular that you wanted

19   to use in developing a screen play for Top Gun

20   Maverick?

21           MS. LENS:  Objection.  Vague.  You can answer.

22           THE WITNESS:  I had read two drafts by Justin

23   Marks, and there were aspects -- there were several

24   elements in those scripts that I did like, but

25   generally, I wanted to rewrite most of it.

Joseph Kosinski  Confidential
August 13, 2025

1    that in the Yonay deposition, you testified that in

2    developing Top Gun Maverick, you had quote 'dozens' of

3    meetings with Singer and Gray?

4          MS. LENS:  That's not a question.

5    BY MR. TOBEROFF:

6      Q    Is that correct?

7          MS. LENS:  Is what correct?  Your

8    representation or that does he --

9    BY MR. TOBEROFF:

10     Q    I'm representing that.  Is that correct?

11     A    I don't know.  It's been a couple of years

12   since I did that deposition, so I don't know if that's

13   exactly what I said.

14     Q    No, I'm asking you.  Is it correct that you

15   had dozens of meetings with Gray and Singer over that

16   six month period?

17     A    I had dozens of meeting with Eric Singer and

18   Shaun Gray was present as was a lot of those Emily

19   Cheung and I believe Christian Donovan.  I think there

20   were times we were all there.  I don't want to make it

21   sound like it was just the three of us, because it

22   wasn't.

23     Q    Okay.  So Emily Cheung was present at most of

24   these meetings?

25     A    Yes.

Joseph Kosinski  Confidential
August 13, 2025

1       Q    When you say what percentage approximately?

2       A    I would like to clarify most.  I would say

3    some.  And if I had to estimate, I would say 50

4    percent.

5       Q    Emily Cheung was present at 50 percent of your

6    story meetings over a six month period?

7       A    I would estimate, 30 to 50 percent.

8       Q    It could be 30 percent?

9       A    It could be, yes.

10      Q    Okay.  And where did those meetings take

11   place?

12      A    At Eric Singer's office on, I want to say it's

13   on third street by the Fairfax farmer's market.

14      Q    Okay.  And how many meetings would take place

15   in any given week, approximately?

16           MS. LENS:  Objection.  Overly broad.

17           THE WITNESS:  Approximately, two to three.

18   Could we do a quick bathroom break, is that okay?

19           MR. TOBEROFF:  Sure.

20           (A brief recess was taken.)

21   BY MR. TOBEROFF:

22      Q    Back on the record.  Before I continue

23   regarding the development process on Top Gun Maverick,

24   I want to just go back briefly to Only the Brave.

25           In your story meetings that you had with

Joseph Kosinski  Confidential
August 13, 2025

1    Singer on Only the Brave, was Shaun Gray present?

2        A    I don't remember Shaun being there.

3        Q    Did you discuss development of Only the

4    Brave -- the Only Brave's screen play with Shaun Gray?

5        A    I don't believe so.

6        Q    What participation, if any, did Shaun Gray

7    have on Only the Brave?

8             MS. LENS:  Objection.  Lacks foundation.  You

9    can answer.

10            THE WITNESS:  I don't remember Shaun Gray's

11   participation in that screen play.

12   BY MR. TOBEROFF:

13       Q    Did you ever recall discussing with Shaun Gray

14   the development of Only the Brave's screen play?

15            MS. LENS:  Objection.  It's been asked and

16   answered.

17            THE WITNESS:  I don't.

18   BY MR. TOBEROFF:

19       Q    During the six month or so development process

20   of the Top Gun Maverick screen play, was Gray present

21   throughout that process?

22            MS. LENS:  Objection.  Vague.

23            THE WITNESS:  I remember Shaun being present

24   at writing meetings I had with Eric at the office.

25   ///

Joseph Kosinski  Confidential
August 13, 2025

1    BY MR. TOBEROFF:

2        Q    And that was throughout the entire process.

3    It didn't start halfway into that process?

4        A    I don't remember when he started being there.

5    I mean, he wasn't there when I had the initial

6    discussions with Eric about being the writer on the

7    movie, but I remember Shaun being at some of the

8    writing sessions at Eric's office.

9        Q    Was Shaun at the majority of those sessions?

10       A    I would say by majority by more than 50

11   percent, yes.

12       Q    Would you say he was there for 75 percent of

13   those story meetings?

14       A    Yeah, yes.

15       Q    How about 90 percent of those story meetings?

16       A    I can't -- I wouldn't -- I can't say 90.  I

17   would say most.  Majority or most, I would be

18   comfortable saying.

19       Q    And at those story meetings, you testified

20   that you recall Eric Singer actually writing portions

21   of the screen play.  Is that still your testimony?

22            MS. LENS:  Objection.  Argumentative.

23            THE WITNESS:  I remember Eric writing on his

24   laptop.  Occasionally, it would be a bit of dialogue.

25   Sometimes it would be a bit of an action.  Sometimes it

Joseph Kosinski  Confidential
August 13, 2025

1    but most of the development was done verbally.

2          It's like a speaking process and pitching

3    ideas back and forth.  That kind of thing.

4    Q    I guess I'm sorting of asking a more technical

5    question or practical question.  How do you know what

6    one person is writing on their laptop, as opposed to

7    another person?

8    A    I can't.  You're right because I'm not staring

9    at the screen, so I don't know that.

10   Q    What did Shaun Gray do at those many

11   development meetings?

12         MS. LENS:  Objection.  Asked and answered.

13   It's vague.

14         THE WITNESS:  My recollection is he would type

15   on his computer as, while Eric and I would have a

16   conversation about story or action beats or bits of

17   dialogue or information, you know, as we were kind of

18   piecing together what the movie was going to be, Shaun

19   was there to write it down, and kind of be a part of

20   the witness to kind of just the creative process.

21   BY MR. TOBEROFF:

22   Q    Did Shaun Gray participate in those creative

23   discussions -- strike that.

24         Did he participate creatively in those

25   discussions?

Joseph Kosinski  Confidential
August 13, 2025

1          MS. LENS:  Objection.  Vague.  You can answer.

2          THE WITNESS:  Yes, he was -- he would

3   participate in the conversations and throw out ideas

4   and react as well, yes.

5   BY MR. TOBEROFF:

6      Q    Did you want to hear Shaun Gray's ideas?

7          MS. LENS:  Objection.  Vague.

8          THE WITNESS:  Primarily, I was working with

9   Eric, but I also understand that a great idea can come

10  from anywhere, and that you should, whether it's -- it

11  could come from anyone on the crew, so I was fine with

12  having him occasionally pipe in his ideas or reactions.

13         It was someone Eric had invited into this

14  space, and he was Eric's cousin, and Eric wanted him to

15  be there, so I was okay with him being there.

16  BY MR. TOBEROFF:

17     Q    What was your impression -- was your

18  impression that Shaun Gray and Eric Singer had a close

19  relationship?

20         MS. LENS:  Objection.  Vague.

21         THE WITNESS:  Yes.  They seemed -- I mean,

22  close -- it seemed like they had a rapport and a

23  relationship that had accrued over years.  It felt like

24  two people that were very comfortable with each other.

25  ///

Joseph Kosinski  Confidential
August 13, 2025

1    our work sessions, but that was it.  Occasionally who

2    go out and grab it at a restaurant or something, but

3    mostly we ate in the room.

4         Q    At these story meetings, did Eric Singer

5    invite Shaun Gray to give his ideas?  Story ideas?

6         A    Yes.  I think yes, he was open to Shaun's

7    input.

8         Q    Was it the exception or the more the rule that

9    at these story meetings, all three of you would share

10   story ideas?  You, Shaun Gray, and Eric Singer?

11        A    I would characterize it, that Eric and I were

12   the creative leads, and I would say, even Eric would

13   defer to me, because it being my -- I'm the director of

14   the film, and I kind of come up with the foundation

15   idea of what the movie was and about.

16             So I would say that Eric and I were the

17   creative leads, but we were open to ideas from Emily,

18   Christian, and Shaun if they wanted to contribute them.

19   It was meant to be a very kind of open, positive

20   atmosphere.  Like I said, the best idea wins,

21   regardless of who it comes from.

22        Q    Would Emily Cheung participate creatively in

23   those meetings to the same degree as Shaun Gray?

24        A    Yes.

25        Q    She would give her creative story ideas?

Joseph Kosinski  Confidential
August 13, 2025

1    times.

2    BY MR. TOBEROFF:

3         Q    And Yank is J.J. Cummings?

4         A    Yes.

5         Q    John Cummings?

6         A    Yes.

7         Q    And was Eric with you at those meetings?

8         A    Most of them.  He was not on the carrier.

9         Q    How many meetings approximately did you have

10   with J.J. Cummings where Eric was present?

11        A    I would estimate, 10.

12        Q    And those were -- where did those take place?

13        A    San Diego, the naval base down there.  Fallon,

14   at the naval base there.  I think we may have had a few

15   meetings in Los Angeles as well.

16        Q    And was Shaun Gray present at those meetings?

17        A    Some of them.

18        Q    Was he present at the majority of those

19   meetings?

20        A    I would say, no.

21        Q    What -- again, estimating, based on your

22   experience, what percentage of those meetings was he

23   present at?

24        A    I would estimate, 20 percent.

25        Q    And did -- were those creative meetings?

```
1              MS. LENS:  Objection.  Vague.
2              THE WITNESS:  Mix of creative and technical.
3    BY MR. TOBEROFF:
4        Q    And did Shaun Gray have -- to the extent they
5    were creative, did Shaun Gray participate by giving his
6    views?
7        A    Occasionally.
8        Q    Did Eric Singer -- strike that.
9              What was J.J. Cummings's role with respect to
10   Top Gun Maverick?
11       A    He was a technical advisor assigned by the
12   Navy.
13       Q    Did he provide -- strike that.
14             (Plaintiff's Exhibit 4 was marked
15             for identification.)
16   BY MR. TOBEROFF:
17       Q    I've marked as Exhibit 4, an e-mail from Emily
18   Cheung to Shaun Gray.  Do you see on the CC line it
19   says █████████████████████████
20       A    Yes.
21       Q    That's your Gmail e-mail account you were
22   referring to earlier?
23       A    Yeah.
24       Q    Do you see in this e-mail where Emily says,
25   "Thanks so much Shaun, and the same to you.  You helped
```

Joseph Kosinski  Confidential
August 13, 2025

1    build it with Eric!"

2        A    Yes.

3        Q    And by 'build it,' she's referring to Top Gun

4    Maverick?

5            MS. LENS:  Objection to the extent that it

6    calls for speculation or lacks foundation.

7            THE WITNESS:  Yes.

8    BY MR. TOBEROFF:

9        Q    Because in the re line, it says, "The Perfect

10   Blockbuster Movie;" correct?

11       A    Yes.

12       Q    I know you're not a mind reader, but what do

13   you believe Emily was referring to when she wrote, "you

14   helped build it with Eric."

15           MS. LENS:  Objection to the extent it lacks

16   foundation.  You could answer.

17           THE WITNESS:  I believe she's referring to

18   those meetings we had when we were working on the

19   screen play.

20   BY MR. TOBEROFF:

21       Q    You're talking about the multiple story

22   development meetings?

23       A    Yes.

24       Q    Why don't we take a break?  I want to see if I

25   have any more questions.

Joseph Kosinski  Confidential
August 13, 2025

1

2

3

4

5

6

7

8

9          I have read the foregoing deposition

10    transcript and by signing hereafter, approve same.

11

12    Dated_____

13

14    _____

15    (Signature of Joseph Kosinski)

16

17

18

19

20

21

22

23

24

25

Joseph Kosinski  Confidential
August 13, 2025

1              DEPOSITION OFFICER'S CERTIFICATE

2                (Civ. Proc. § 2025.520(e))

3

STATE OF CALIFORNIA          }
4                            }  SS.
COUNTY OF LOS ANGELES        }

5

6          I, JOY CHIOU, hereby certify:

7          I am a duly qualified Certified Shorthand

8    Reporter in the State of California, holder of

9    Certificate Number CSR 13899, issued by the Court

10   Reporters Board of California and which is in full

11   force and effect.  (Bus. & Prof. 8016).

12          I am not financially interested in this action

13   and am not a relative or employee of any attorney of

14   the parties, or of any of the parties.  (Civ. Proc.

15   2025.320(a))

16          I am authorized to administer oaths or

17   affirmations pursuant to California Code of Civil

18   Procedure, Section 2093(b) and prior to being examined,

19   the witness was first placed under oath or affirmation

20   by me.  (Civ. Proc.  2025.320, 2025.540(a))

21          I am the deposition officer that

22   stenographically recorded the testimony in the

23   foregoing deposition and the foregoing transcript is a

24   true record of the testimony given.  (Civ. Proc.

25   2025.540(a))

Joseph Kosinski  Confidential
August 13, 2025

1          I have not, and shall not, offer or provide

2     any services or products to any party's attorney or

3     third party who is financing all or part of the action

4     without first offering  same to all parties or their

5     attorneys attending the deposition and making same

6     available at the same time to all parties or their

7     attorneys.  (Civ. Proc. 2025.320(b))

8          I shall not provide any service or product

9     consisting of the deposition officer's notations or

10    comments regarding the demeanor of any witness,

11    attorney, or party present at the deposition to any

12    party or any party's attorney or third party who is

13    financing all or part of the action, nor shall I

14    collect any personal identifying information about the

15    witness as a service or product to be provided to any

16    party or third party who is financing all or part of

17    the action.  (Civ. Proc. 2025.320(c))

18

19    Dated August 13, 2025.

20                                 _____

21

22

23

24

25